NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| DIEGO BANTAY MAYUYO, | Court of Appeals No. A-11786 |
| Appellant, | Trial Court No. 3UN-12-052 CR |
| v. | |
| | **O P I N I O N** |
| STATE OF ALASKA, | |
| Appellee. | No. 2556 — June 2, 2017 |

Appeal from the Superior Court, Third Judicial District, Unalaska, Patricia Douglass, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard, Judge.

Judge MANNHEIMER, writing for the Court.
Judge ALLARD, concurring.

Diego Bantay Mayuyo appeals his conviction for first-degree sexual assault. He argues that the trial judge committed error by (1) allowing the State to introduce an altered version of a statement that Mayuyo made to his roommate shortly after the alleged sexual assault, and by (2) prohibiting Mayuyo's attorney from cross-

examining the roommate about the alteration in the statement. Mayuyo contends that the altered version of his out-of-court statement was substantially misleading (in a manner unfavorable to him), and that his trial was unfair because the trial judge prohibited his defense attorney from clarifying the misleading aspects of the altered version of the statement.

We agree with Mayuyo that the superior court's rulings on this issue were improper, and that Mayuyo's trial was rendered unfair because of these rulings. Mayuyo is therefore entitled to a new trial.

Mayuyo also contends that the charge against him should be dismissed with prejudice because he was not brought to trial within the time limits of Alaska Criminal Rule 45. For the reasons explained in this opinion, we conclude that Mayuyo was brought to trial within the time limits of Rule 45.

*Why we conclude that the superior court committed error by (1) allowing the State to present an altered and misleading version of Mayuyo's out-of-court statement, and by (2) prohibiting Mayuyo's attorney from asking witnesses about the alteration*

Mayuyo and his co-defendant, Ismael Balallo, were charged with sexually assaulting a woman named L.V. in Unalaska. At Mayuyo's trial, the State wanted to introduce an out-of-court statement that Mayuyo made to his roommate, Rommel Viado, shortly after the alleged sexual assault. According to Viado, Mayuyo told him several times, "We're going to jail." However, Viado understood Mayuyo to be saying that he (Mayuyo) and Balallo were going to jail *because of what Balallo had done*.

Because Mayuyo and Balallo were being tried together, the prosecutor acknowledged that if Viado was called to testify about Mayuyo's out-of-court statements, this would raise a confrontation problem under the United States Supreme

Court's decision in *Bruton v. United States*[1] — because Mayuyo's statements directly incriminated his co-defendant Balallo.

In *Bruton*, as later modified by *Richardson v. Marsh*,[2] the Supreme Court held that a defendant's Sixth Amendment right of confrontation is violated if the confession of a non-testifying co-defendant is introduced at their joint trial, and if this confession directly implicates the defendant.

In *Richardson v. Marsh*, the Supreme Court set out three alternatives for resolving this confrontation problem: (1) the government can try the co-defendants separately, or (2) the government can elect not to introduce the co-defendant's confession, or (3) the government can alter the co-defendant's confession so that it no longer directly implicates the other defendants — in which case, the trial judge must instruct the jurors that they can only consider the confession when evaluating the guilt of the person who made it.[3]

We addressed this third approach — alteration of the confession — in *Pease v. State*, 54 P.3d 316, 327 (Alaska App. 2002). While Pease was in jail awaiting trial on charges related to a homicide, a fellow inmate asked him "if he really did it." Pease responded, "We were fucked up. It was bad."[4] The inmate understood Pease to

---

[1]    391 U.S. 123, 126, 128-29; 88 S.Ct. 1620, 1623-25; 20 L.Ed.2d 476 (1968).

[2]    481 U.S. 200, 211; 107 S.Ct. 1702, 1709; 95 L.Ed.2d 176 (1987) (limiting *Bruton* to instances where the confession of the non-testifying co-defendant directly implicates the defendant).

[3]    *Richardson*, 481 U.S. at 208-211, 107 S.Ct. at 1707-09. See also *Pease v. State*, 54 P.3d 316, 327 (Alaska App. 2002), where this Court explained and summarized the Supreme Court's decision in *Richardson v. Marsh*.

[4]    *Id*. at 327-28.

be referring to the murder that Pease and his co-defendant, Marvin Roberts, were charged with committing. [5]

Pease and Roberts were tried jointly, and the prosecutor recognized that *Bruton* barred the admission of Pease's out-of-court statement to the fellow inmate. To circumvent this *Bruton* problem, the prosecutor suggested paraphrasing Pease's statement: the fellow inmate would be instructed to testify that Pease said, "*I was* fucked up" rather than "*we were* fucked up". [6] The superior court approved this approach: the prosecutor was allowed to introduce the altered statement, and the judge gave the jury a limiting instruction. [7] We affirmed the superior court's decision on appeal. [8]

In Mayuyo's case, the prosecutor proposed a similar approach to Viado's testimony about Mayuyo's out-of-court statements. The prosecutor suggested (1) that she would not ask Viado about Mayuyo's direct accusations against Balallo, and (2) that Viado should be instructed to testify that Mayuyo said, "*I'm* going to jail," rather than "*We're* going to jail."

Mayuyo's defense attorney objected that this alteration would significantly change the meaning of Mayuyo's out-of-court statement. As we have explained, Viado understood Mayuyo to be saying that he (Mayuyo) would be going to jail because of what *Balallo* had done. But if the statement was altered as the prosecutor proposed, and if (as required by *Bruton*) no one could ask Viado to clarify that Mayuyo had been accusing Balallo of sexual assault, then Mayuyo's altered statement would appear to be an admission of *Mayuyo's* own wrongdoing.

---

[5]    *Ibid.*

[6]    *Id*. at 328.

[7]    *Ibid.*

[8]    *Id*. at 329.

This flaw in the prosecutor's approach to the *Bruton* issue should have been obvious to everyone involved in the trial. Nevertheless, the trial judge adopted the prosecutor's suggestion, over the vehement objection of Mayuyo's attorney (and also the objection of Balallo's attorney). The trial judge ruled that Viado could testify to an altered version of Mayuyo's words — changing "*We're* going to jail" to "*I'm* going to jail."

After the judge issued this ruling, Mayuyo's attorney asked if he would be allowed to cross-examine Viado to elicit the fact that, when Mayuyo spoke about going to jail, he was referring mainly to what *Balallo* had done. The trial judge answered no. She told the defense attorney, "[My] ruling ... definitely preclude[s] you from addressing that [point] in your cross-examination. Because, otherwise, there would be no point [in altering Mayuyo's statement]."

Later, when Viado took the stand at Mayuyo's and Balallo's trial, the prosecutor asked Viado if Mayuyo had said he was "concerned about going to jail." Viado responded, "Yes." The defense attorney adhered to the superior court's ruling and did not try to cross-examine Viado about the reasons Mayuyo gave for fearing that he would go to jail.

In closing argument, the prosecutor relied on this evidence to argue that Mayuyo "knew what happened that night was bad", and that Mayuyo was already "talk[ing] about going to jail".

We conclude that the superior court erred by allowing the State to introduce this altered version of Mayuyo's out-of-court statement. The alteration of Mayuyo's statement certainly protected Balallo's confrontation rights under *Bruton*. But the alteration was unfair to Mayuyo. Compared to Mayuyo's original statement, the altered version made it appear that Mayuyo was incriminating himself to a significantly greater degree.

*Richardson v. Marsh* allows a trial judge to resolve a *Bruton* problem by letting the government introduce an altered version of a defendant's out-of-court statement. But the judge must take care that the altered version of the statement still accurately reflects what the defendant was saying about the defendant's own culpability.

Here, the altered version of Mayuyo's statement no longer accurately conveyed the sense of Mayuyo's original statement. The altered version materially misrepresented what (according to Viado) Mayuyo had said about his own involvement in the crime. The trial judge therefore committed error by allowing the State to introduce that altered version.

The State makes no argument that this error was harmless — and, in any event, we conclude from our independent review of the record that this error was not harmless beyond a reasonable doubt. Accordingly, we reverse Mayuyo's conviction.

*Why we conclude that Mayuyo was brought to trial within the time limits of Criminal Rule 45*

Mayuyo separately argues that he is entitled to dismissal of his case with prejudice because he was not brought to trial within the time limits of Alaska Criminal Rule 45.

Mayuyo's speedy trial claim hinges on the resolution of one question: whether the superior court abused its discretion when it delayed Mayuyo's trial by 31 days so that Mayuyo's trial could remain joined with the trial of his co-defendant Balallo. For the reasons we explain here, we conclude that the superior court's ruling does not constitute an abuse of discretion.

The Rule 45 speedy trial calculation began when Mayuyo was served with the criminal complaint on March 29, 2012. [9] Thus, Day 1 of the Rule 45 calculation was March 30, 2012, and the projected 120th day — *i.e.*, the projected last day for bringing Mayuyo to trial — was July 27, 2012. [10]

At a pre-indictment hearing on April 6th, Mayuyo's attorney asked for a continuance to pursue further investigation of the case. Without objection, the court set Mayuyo's next pre-indictment hearing for May 1, 2012. The defense attorney's request tolled the Rule 45 clock for 25 days — or, rather, the speedy trial clock *would have* been tolled for 25 days, except for the fact that Mayuyo was indicted and then arraigned on that indictment *before* the scheduled May 1st pre-indictment hearing.

The grand jury indicted Mayuyo on April 13, 2012, and Mayuyo's superior court arraignment took place four days later, on April 17, 2012. Because Mayuyo was arraigned on his indictment before the requested 25 days elapsed, the Rule 45 clock was only tolled for the 12 days from April 6th to April 17th (inclusive).

At Mayuyo's arraignment on April 17th, the superior court erroneously calculated the Rule 45 expiration date to be July 28, 2012 (a Saturday). This calculation mistakenly gave the State 121 days to bring Mayuyo to trial, rather than 120 days, but neither party objected.

The superior court's calculation also mistakenly failed to exclude the 12-day period that was tolled because of Mayuyo's request for a continuance of the pre-indictment hearing. With the added 12 days, the actual Rule 45 expiration date was August 8, 2012.

---

[9]  *See* Criminal Rule 45(c)(1).

[10]  *See* Criminal Rule 40(a): "Except as otherwise specifically provided … , in computing any period of time, the day of the act or event from which the designated period of time begins to run is not to be included."

Mayuyo and his co-defendant Balallo were scheduled to be tried together. But at the beginning of July, the State alerted the superior court that there was a potential severance problem: the State believed that one co-defendant would be ready for the scheduled trial, while the other would ask for a continuance. The State suggested that the trial of both defendants be delayed until early September 2012.

On July 3rd, the parties appeared in court to discuss the possibility of delaying the trial. Mayuyo's attorney announced that he was ready for trial, and he objected to the proposed continuance. However, this matter was not resolved on July 3rd, and the court continued the hearing until July 5th (since July 4th was a holiday).

Both Mayuyo and the State agree that the Rule 45 calculation was tolled for these additional two days. This meant that the actual Rule 45 expiration date was now August 10, 2012.

On July 5th, the superior court ruled that Mayuyo's trial should remain joined with his co-defendant Balallo's trial, and that this joint trial should be continued. The superior court set the trial for the week of Monday, September 10th — the next scheduled trial calendar in Dutch Harbor.

This scheduled trial date of September 10, 2012 was 31 days over the then-current Rule 45 expiration date of August 10th.

The following month (on August 8th), the superior court held a status hearing regarding the feasibility of holding trial during the week of September 10th. The parties informed the court that they were encountering difficulties in making travel arrangements and in securing hotel accommodations. Without objection, the court continued the trial until September 24, 2012. And the trial did, in fact, begin that day.

Given this series of events, Mayuyo was brought to trial within the time limits of Criminal Rule 45 *unless* the superior court committed error when, in response

to the State's July motion for a continuance, the court rescheduled Mayuyo's and Balallo's joint trial for September 10th.

The provision of Rule 45 that applies to the superior court's ruling is subsection (d)(5), which states that a "reasonable period of delay" shall be excluded from the Rule 45 calculation if co-defendants are joined for trial and there is good cause for not granting a severance.

In *Miller v. State*, we explained that the Rule 45 clock will be tolled under subsection (d)(5) only if the trial court (1) specifically considers the question of severance, (2) concludes that the requested continuance will constitute only a "modest extension of the [Rule 45] time limits," and (3) concludes that holding a joint trial is important to the prosecution's case. [11]

In Mayuyo's case, the superior court expressly addressed the question of whether Mayuyo's and Balallo's trials should remain joined (and should be continued), or whether the trials should be severed. Applying the test that this Court established in *Miller*, the superior court concluded that delaying Mayuyo's trial until September 10, 2012, constituted a modest extension of time, and that there was a significant interest in keeping Mayuyo's and Balallo's cases joined for trial.

Regarding this latter prong of the *Miller* test, the court noted that the State's evidence against the two co-defendants was "about as intertwined as you can [possibly] get." The court also noted that, because the evidence against the two defendants was so closely connected, and because Dutch Harbor is a relatively small community, holding Mayuyo's trial in late July or early August would probably make it difficult to select a second jury for Balallo's trial only a few weeks later, in September.

---

[11]   706 P.2d 336, 340 (Alaska App. 1985).

A trial court's decision under *Miller* should be reviewed for "abuse of discretion" because this is a situation where (1) the law does not specify a particular "right" answer, but instead only specifies the factors or criteria that a judge should consider, and where (2) reasonable judges, given the same facts and applying the correct criteria, might come to differing conclusions about how to deal with the problem. [12]

Given the record in Mayuyo's case, we conclude that the superior court did not abuse its discretion when the court concluded that the interest in having Mayuyo's and Balallo's cases tried together justified a 31-day extension of the Rule 45 time limit in Mayuyo's case.

We therefore conclude that Mayuyo was tried within the time limits of Criminal Rule 45.

*Conclusion*

The judgement of the superior court is REVERSED, but Mayuyo may be retried should the State elect to do so.

---

[12] *See Booth v. State*, 251 P.3d 369, 373 (Alaska App. 2011).

Judge ALLARD, concurring.

I join the majority decision and write separately only to emphasize that the *Bruton* problem presented in this case could have been easily solved by the court granting Mayuyo's motion to sever (or by the prosecutor choosing to forego use of Mayuyo's statement at trial). Instead, the prosecutor opposed the motion to sever and the trial judge denied the motion and permitted the prosecutor to introduce an altered and misleading version of Mayuyo's statement to the jury. As the majority opinion points out, there are significant risks associated with redacting or altering a non-testifying defendant's statement in order to eliminate references to a co-defendant. In some cases, the redaction will not go far enough and will insufficiently protect the co-defendant's rights under the confrontation clause.[1] In other cases, as occurred here, the redaction will go too far, distorting the meaning of the statement and prejudicing the rights of the defendant who made the statement.[2] Given this, courts should carefully consider whether

---

[1] *See, e.g., Gray v. Maryland*, 523 U.S. 185, 193 (1998) (holding that *Bruton* may be violated if the act of redaction is obvious); *Vazquez v. Wilson*, 550 F.3d 270, 280 (3rd Cir. 2008) (reversing convictions where the references to the two accomplices were replaced with the terms "my boy" and "the other guy" because, in context, these terms unmistakably referred to the co-defendant on trial); *People v. Archer*, 99 Cal. Rptr. 2d 230, 235 (Cal. App. 2000) (reversing a conviction where the jury would likely infer that the pronouns in the redacted statement referred to the co-defendant).

[2] *See, e.g., Ex parte Sneed*, 783 So. 2d 863, 870-71 (Ala. 2000) (reversing a conviction where the alteration of the defendant's statements from "we" to "I" distorted the meaning of the statement and undermined the defendant's defense); *State v. Rakestraw*, 871 P.2d 1274, 1281 (Kan. 1994) (reversing a murder conviction where the redacted version of the defendant's out-of-court statement distorted its meaning in a way that deprived the defendant of a fair trial); *People v. La Belle*, 222 N.E.2d 727, 729 (N.Y. 1966) (reversing a conviction where the redaction of the defendant's statement distorted the meaning of the statement and seriously prejudiced the defendant).

the benefits that might be gained by a joint trial are worth the risk of potentially injecting reversible error into the State's case.

2556