NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

CHARLIE WILLIE STEVEN,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13170
Trial Court No. 4BE-16-00670 CR

O P I N I O N

No. 2764 — November 9, 2023

Appeal from the Superior Court, Fourth Judicial District, Bethel, Nathaniel Peters, Judge.

Appearances: Marjorie A. Mock, Attorney at Law, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. RuthAnne Beach, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Clyde "Ed" Sniffen Jr., Acting Attorney General, Juneau, for the Appellee.

Before: Wollenberg, Harbison, and Terrell, Judges.

Judge WOLLENBERG, writing for the Court and concurring separately.

Following a jury trial, Charlie Willie Steven was convicted of second-degree sexual assault for engaging in sexual penetration with M.F. while knowing she was incapacitated.[1]  At Steven's trial, the superior court allowed the State to introduce a redacted version of a telephone conversation between Steven and M.F. that had been recorded pursuant to a *Glass* warrant.

On appeal, Steven argues that the State's redactions unfairly altered the meaning of his statements during the conversation, and that the entirety of the *Glass* recording should have been admitted under the common law rule of completeness and Alaska Evidence Rule 106.  The State responds that Steven's redacted statements were inadmissible hearsay when offered by Steven, and that the redacted statements were unnecessary to provide context for the remaining statements.

Steven's appeal requires us to interpret Alaska Evidence Rule 106.  Under this rule, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."[2]  In prior cases, we have suggested that Rule 106 is only a rule of timing, not admissibility — *i.e.*, that the rule allows an adverse party to accelerate the introduction of other portions of the statement that are already admissible, but does not provide an independent basis to introduce otherwise inadmissible evidence.

But the facts of this case demonstrate that such a strict reading of the rule — with no allowance for the admissibility of evidence when necessary to provide a complete understanding of a statement — can result in an outcome that is fundamentally

---

[1]  Former AS 11.41.420(a)(3)(B) (2016).

[2]  Alaska R. Evid. 106.

unfair and misleading. In the State's redacted version of the telephone conversation, Steven acknowledged that he had sex with M.F. when she was not sober, and he asked M.F. to forgive him. But in the portions kept from the jury, Steven asserted that, when he asked M.F. that day if she would have sex with him, she "kept saying ya." This statement placed Steven's request for forgiveness in context and potentially undermined the State's proof that M.F. was actually incapacitated or that Steven knew that M.F. was incapacitated.

Given our conclusion that these complementary statements were essential to a proper understanding of the conversation and to avoid misleading the jury, we have reviewed our prior decisions on this topic, together with the history of the common law rule of completeness and Evidence Rule 106, as well as cases from other jurisdictions interpreting similar rules. Having done so, we conclude that our prior statements suggesting that Alaska Evidence Rule 106 is solely a rule of timing were dicta and that, upon closer consideration, they were incorrect.

As we explain in detail below, the more well-reasoned interpretation of Evidence Rule 106, and the one that we adopt today, is that Rule 106 is both a rule of timing and a rule of admissibility. In particular, with respect to admissibility, writings and recorded statements that would otherwise be inadmissible if offered by one party are admissible under Evidence Rule 106 when those statements are necessary to explain or clarify a writing or recording that the proponent introduces — that is, when the complementary portions "ought in fairness to be considered contemporaneously."

In light of this holding, and given our determination that the superior court's ruling was not harmless, we reverse Steven's conviction.

*Background facts*

In the early morning of October 10, 2016, Charlie Steven and his girlfriend, Wilma Michael, heard a woman "hollering" outside their home in Tuntutuliak. When Steven went to investigate, he found M.F., his second cousin, lying on the nearby boardwalk. M.F. was too intoxicated to stand and was yelling incoherently. Together, Steven and Michael carried M.F. into their house, where she fell asleep on the floor.

Two or three hours later, M.F. woke up and moved to a bed in the living room, where Steven was sitting at a table. According to Michael's testimony at trial, M.F. still appeared intoxicated at this point, but she was no longer slurring her words or yelling and she could stand and walk on her own. Michael heard M.F. speaking with Steven, but she could not hear the substance of the conversation. Michael then briefly left the home to run an errand.

After Michael returned, M.F. called her friend, Marcella Jimmie, for a ride home. Jimmie and Michael later testified that M.F. did not seem emotional on the call. When Jimmie arrived at Steven's house a short while later, she observed M.F. sitting at the kitchen table, "look[ing] sad or something" and drinking alcohol. After ten to fifteen minutes, M.F. and Jimmie left because M.F. was becoming intoxicated.

As M.F. and Jimmie were getting on Jimmie's four-wheeler, M.F. began to cry and told Jimmie that Steven had raped her. Jimmie took M.F. to her father's house, where M.F. told her father the same thing. M.F. later contacted the village police officer and told the officer that she had been raped. The officer referred the matter to the Alaska State Troopers.

Later that day, M.F. flew into Bethel for an interview and sexual assault examination. During the interview, M.F. reported that she could not remember how she

wound up at Steven's house but that she woke up from a blackout to find herself lying on a mattress with Steven on top of her, penetrating her with his penis.

The next day, Trooper Nicholas Hayes recorded a phone conversation between M.F. and Steven pursuant to a *Glass* warrant.[3] (The call was conducted mostly in Yup'ik — with some statements in English — and a written transcript of the call, with translation from Yup'ik, was prepared prior to trial.[4])

During the call, Steven acknowledged having had sex with M.F., and he agreed that M.F. would not have consented to having sex if she had been sober. According to the prepared transcript, the following exchange occurred:

> *M.F.*:  You know I wouldn't approve of it if I was sober.
>
> *Steven*:  Yea, I know you wouldn't.

But Steven also told M.F. that he had sought her consent before anything happened, and she "kept saying 'ya'":

> *M.F.*:  What made you think it was okay to go ahead and do that while I was unconscious?
>
> *Steven*:  I asked you and you kept saying ya. (Background noise)  And if, and if you said no, I would have respected it.

---

[3]  *See State v. Glass*, 583 P.2d 872 (Alaska 1978).

[4]  On appeal, Steven attached a transcript of the complete call as an appendix to his opening brief.  Although the transcript appears to have been mistakenly excluded from the formal trial record transmitted to this Court, our review of the record indicates that a transcript of the complete call was submitted to the superior court so that the court could rule on the State's proposed redactions.  The full transcript is therefore properly before us.  The State does not object to our reliance on the transcript attached to Steven's brief.

> *M.F.*: I was really drunk and you should know that's not okay.
>
> *Steven*: You kept. Well you kept saying ya.
>
> *M.F.*: I don't even —
>
> *Steven*: Qalarlluten-llu. Qalarlluten-llu assiklarnilua. (You kept saying, you kept saying that you like me.) . . . assikpialarnilua qalarlluten. (You kept saying that you really like me.)

Steven also told M.F. that he had asked several times if she was sure about having sex:

> *Steven*: Ya, if you had said no, I would have left you alone, but I asked you five times. And you kept saying ya. And if you were sure about it and you said ya.
>
> *M.F.*: You should know not to do that to anybody that's really drunk.
>
> *Steven*: Well that's why, that's why I kept asking.
>
> *M.F.*: You don't take advantage of that kind of stuff.
>
> *Steven*: Five times aptell (ask) that's why I asked you five times. And I asked you if you were sure about it and you said ya.

As the call ended, Steven asked M.F. not to report him and promised to "not do that again."

Trooper Hayes also interviewed Steven. During the interview, Steven initially denied having sex with M.F. However, after Hayes informed Steven that he had listened to Steven's call with M.F. earlier that day, Steven acknowledged having had sex with M.F. But Steven also said that he "asked [M.F.] if she wanted to and . . . asked her if she was sure about it."

Following the investigation, a grand jury indicted Steven on one count of second-degree sexual assault for engaging in sexual penetration with M.F. while knowing that she was incapacitated.[5]

*Trial proceedings*

Prior to trial, the State gave notice that it intended to introduce the *Glass* warrant recording and written transcript (with necessary translation) at trial, but wished to redact certain portions of Steven's statements.[6] The State argued that the statements it sought to redact were "self-serving" hearsay and inadmissible when offered by Steven.[7] In particular, the State wanted to redact Steven's assertions that he repeatedly asked M.F. if she wanted to have sex and that she "kept saying ya" — while introducing his acknowledgments that M.F. would not have consented to having sex if she had been sober.

---

[5] *See* former AS 11.41.420(a)(3)(B) (2016). Under AS 11.41.470(2), "incapacitated" is defined as "temporarily incapable of appraising the nature of one's own conduct or physically unable to express unwillingness to act[.]"

[6] The State sought to introduce Steven's statements under Alaska Evidence Rule 801(d)(2), which provides that a party's own statement, when offered against that party, is not hearsay.

[7] *See State v. Agoney*, 608 P.2d 762, 764 (Alaska 1980) (holding that statements made by the defendant during a custodial interrogation over an hour after his arrest were hearsay and did not fall within the excited utterance exception to the hearsay rule). *Agoney* and its progeny do not preclude a defendant's "self-serving" statements as a categorical matter. Rather, those cases stand for the general rule that out-of-court statements (including a defendant's) are inadmissible if the statements are hearsay — *i.e.*, offered for the truth of the matter asserted — and do not fall within an exception to the hearsay rule. *See Marino v. State*, 934 P.2d 1321, 1331 (Alaska App. 1997); *Stumpf v. State*, 749 P.2d 880, 899 (Alaska App. 1988).

Steven's attorney objected to the State's redactions, arguing that fairness required the entire phone call to be admitted under Alaska Evidence Rule 106.[8] The attorney noted that Steven did not know the call was being recorded; he contended that the State's proposed redactions would materially misrepresent Steven's statements and mislead the jury into believing Steven had confessed to the crime when in fact he had repeatedly asserted that M.F. was awake and actively consenting (and thus, was either not incapacitated or was acting in such a way that Steven would not know she was incapacitated).

The superior court made some additional redactions that it believed were necessary to avoid misleading the jury, but generally rejected Steven's argument that the entire conversation needed to be admitted for appropriate context. In the end, the State was permitted to introduce Steven's acknowledgment that he knew M.F. "wouldn't approve" of the encounter if she had been sober — but Steven was not allowed to present his contemporaneous statements that M.F. seemed conscious, that she "kept saying ya" when he sought her consent, and that he had tried to confirm five times that she was "sure" about her decision. (Both the redacted audio and redacted transcript were admitted at trial.)

The primary disputed issues at trial were whether M.F. was incapacitated and whether Steven knew that she was incapacitated. M.F. testified that she woke up in the late afternoon on October 9 and began drinking. After midnight, she went to see a

---

[8] Alaska Rule of Evidence 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

friend, Daryl, with whom she continued drinking, had sex, and eventually blacked out. She did not remember leaving Daryl's house or heading toward Steven's house.

According to M.F., once at Steven's house, she went "in and out of the blackout." At one point when she woke up, she was lying on her back on a mattress, without her pants or underwear, and Steven was on top of her, penetrating her vagina with his penis. M.F. testified that she was angry and upset, and did not want to have sex with Steven. M.F. did not know how long she was at Steven's house. Based on witness interviews, a trooper estimated that M.F. had been at Steven's house for approximately six to eight hours.

M.F.'s friend, Daryl, testified that M.F. came to his house sometime late at night on October 9 or in the early morning on October 10 to have sex and drink, at which point he estimated her intoxication level to be a five out of ten. Daryl stated that M.F. appeared to be more intoxicated when she left his house than when she arrived (a seven out of ten), but he had no reason to think that she was blacked out. Daryl also testified that he had had sex with M.F. on a prior occasion, believing that she was conscious of her actions, but later learned from M.F. that she had been blacked out.

Steven elected not to testify in his defense. The jury ultimately found Steven guilty of second-degree sexual assault.

This appeal followed.

*The parties' arguments regarding the rule of completeness and Alaska Evidence Rule 106, and why we reconsider our prior statements regarding Alaska Evidence Rule 106*

On appeal, Steven argues that the superior court's decision to admit a redacted version of his telephone conversation with M.F. resulted in a materially misleading presentation of his statements, and that fairness, the rule of completeness, and

Evidence Rule 106 required the admission of the redacted portions together with the portions introduced by the State.

The State responds that the redacted portions were hearsay if offered by Steven and therefore inadmissible. For support, the State relies on prior cases from this Court characterizing Alaska Evidence Rule 106 as a rule of timing rather than a rule of admissibility. In *Sipary v. State*, for instance, we wrote that "Evidence Rule 106 is not a 'rule of completeness' in the sense that it *authorizes* the admission of the complementary evidence" but instead "gives the parties against whom written or recorded evidence has been admitted the power to *accelerate the timing* of their opportunity to introduce complementary evidence."[9] The State further contends that, in any event, the redactions did not materially alter the substance or tenor of Steven's statements.

Steven offers three rationales for admission of his additional statements. First, Steven suggests that the common law rule of completeness — which *was* a rule of admissibility — survived the codification of the Alaska Rules of Evidence.[10] Second, relying on scholarly commentary and decisions from other jurisdictions, Steven argues that a restrictive interpretation of Alaska Evidence Rule 106 as a rule of timing is incorrect. Third, Steven contends that a party who offers a portion of a statement forfeits

---

[9] *Sipary v. State*, 91 P.3d 296, 300 (Alaska App. 2004) (emphasis in original) (citing *Stoneking v. State*, 800 P.2d 949, 951-52 (Alaska App. 1990)).

[10] *See, e.g.*, 21A Charles Alan Wright & Kenneth W. Graham Jr., *Federal Practice and Procedure, Federal Rules of Evidence* § 5072, at 387-88 (2d ed. 2005; updated Daniel D. Blinka ed., Apr. 2023) (explaining that, under the common law, a party "can introduce what would otherwise be hearsay to complete a truncated statement offered by the proponent").

any objection to the admission of the completing evidence when that evidence is necessary to correct a misleading impression.[11]

Having reviewed the record, we conclude that Steven's additional statements should have been admitted. Alaska Evidence Rule 102 provides that the rules of evidence "shall be construed to secure fairness in administration . . . to the end that truth may be ascertained and proceedings justly determined." The State has not meaningfully explained how its proposed construction of Alaska Evidence Rule 106 — which would allow the State to introduce a misleading version of a defendant's statement and then preclude the defendant from correcting the resulting misimpression — would be consistent with due process and the requirement that the rules be interpreted to "secure fairness."

Thus, the difficulty presented by this case is not in deciding *whether* an error occurred, but in explaining *why* — so that future litigants and courts have a clearer understanding of how to proceed when similar issues arise.

*An overview of our analysis*

The proper interpretation of Evidence Rule 106 has been a source of dispute across the country. A number of courts have interpreted their versions of Rule 106[12] as both a rule of timing and a rule of admissibility — *i.e.*, as authorizing a party to

---

[11]  *See* 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02[3], at 106-13 (12th ed. 2019) ("The appropriate way to resolve the hearsay issue is to hold that the party who offers an incomplete statement or document forfeits any hearsay objection to completing evidence that is necessary to correct a misleading impression.").

[12]  The language of the rule is largely consistent across jurisdictions. *See, e.g.*, Fed. R. Evid. 106; Colo. R. Evid. 106; N.M. R. Evid. 11-106; S.C. R. Evid. 106; Utah R. Evid. 106; Wis. Stat. § 901.07.

accelerate the introduction of evidence when necessary for completion purposes, even if that evidence would otherwise be inadmissible. Other courts have interpreted Rule 106 restrictively, as solely a rule of timing. But even those courts that have adopted a restrictive view of Rule 106 have often adopted alternative, and frequently convoluted, theories of admissibility in an attempt to avoid the worst consequences of their restrictive interpretation.

We are mindful, however, that we are not writing on a blank slate. While early cases from this Court could be read to suggest that hearsay is admissible if necessary for completeness under Alaska Evidence Rule 106,[13] other cases declared that Rule 106 does not serve this purpose. For example, in *Stoneking v. State*, this Court stated that Alaska Evidence Rule 106 "does not make admissible statements that would otherwise be inadmissible; it is meant only to allow contemporaneous admission of evidence that would ordinarily not be admissible until later stages of the trial."[14] We later affirmed and expanded this assertion in *Sipary v. State* — although we suggested

---

[13] *See, e.g.*, *Stumpf v. State*, 749 P.2d 880, 899 (Alaska App. 1988) ("Generally, defendants may not offer their own statements into evidence because they are hearsay. When the state, however, presents one part of a conversation or statement, or one conversation in a series, the defendant may be entitled to offer or require the state to offer, the rest of the statement or conversations in order to set the context for statements already in evidence." (citation omitted)); *Brannen v. State*, 798 P.2d 337, 340 (Alaska App. 1990) ("[B]ecause the edited portion of the tape that was played for the jury was not misleading or confusing, the exculpatory statements that were excised as hearsay were not necessary or admissible on grounds of testimonial completeness.").

[14] *Stoneking*, 800 P.2d at 951-52.

that litigants seeking to introduce otherwise inadmissible evidence for completion purposes could potentially resort to a common law theory of admissibility.[15]

But our analysis in *Stoneking* was cursory and, as we explain later in this opinion, both cases relied too heavily on the Commentary to Alaska Evidence Rule 106 to the exclusion of other critical sources. Moreover, in both *Stoneking* and *Sipary*, we ultimately concluded that the disputed evidence was not truly complementary — *i.e.*, it was not needed for completion purposes. Our discussion of the scope of Rule 106 was therefore dicta.

In contrast, in this case, we are directly faced with a situation in which the redactions created an inherent unfairness and a distorted view of the defendant's statements. We must therefore address definitively the question of whether Alaska Evidence Rule 106 authorizes the admission of otherwise inadmissible hearsay for completion purposes.

We begin our analysis by discussing the common law rule of completeness and the history of Federal Evidence Rule 106, on which our rule is expressly based. We address the emergence of a federal circuit court split regarding the proper interpretation of Federal Evidence Rule 106 — and recent clarifying amendments to the federal rule by the United States Supreme Court, which will resolve the issue in favor of explicitly authorizing the introduction of otherwise inadmissible hearsay for completion purposes.

We then turn to the history of Alaska Evidence Rule 106 and our prior cases addressing the scope of the rule. We conclude with a closer examination of the work-around solutions that some courts have endorsed to avoid the unfairness that can result from the exclusion of completing evidence on hearsay grounds.

---

[15] *Sipary v. State*, 91 P.3d 296, 300-01 (Alaska App. 2004).

After carefully reviewing all of these authorities, we are convinced by the position adopted by a number of federal circuit courts and state appellate courts, and nearly all scholarly commentary, that Evidence Rule 106 is a rule of both timing *and* admissibility — and that our contrary suggestion in earlier cases was misguided and based on an incomplete analysis of the historical underpinnings of the rule.

*The history of Federal Evidence Rule 106*

Alaska Evidence Rule 106 was modeled on Federal Evidence Rule 106,[16] which in turn traces its origin to the common law rule of completeness.[17] Under the common law rule of completeness, "'a party has the right to introduce the remainder of a writing [or] statement . . . that his or her opponent introduced' to the extent that this remainder 'relates to the same subject matter and . . . tends to explain or shed light on the meaning of the part already received.'"[18] The rule was "designed to prevent litigants from introducing portions of an out-of-court statement when these portions, taken out of context, would tend to be misleading."[19]

---

[16] *See Marron v. Stromstad*, 123 P.3d 992, 1004 (Alaska 2005) ("Alaska's rules of evidence are similar to, and were modeled after the Federal Rules of Evidence.").

[17] 21A Charles Alan Wright & Kenneth W. Graham Jr., *Federal Practice and Procedure, Federal Rules of Evidence* § 5071, at 362-63 (2d ed. 2005; updated Daniel D. Blinka ed., Apr. 2023) (explaining the history of Federal Evidence Rule 106).

[18] *Sipary*, 91 P.3d at 299 (alterations in original) (quoting *State v. Warren*, 732 A.2d 1017, 1019 (N.H. 1999)).

[19] *Id.*; *see also* 1 Barbara E. Bergman & Nancy Hollander, *Wharton's Criminal Evidence* § 4:10, at 309 (15th ed. 1997) (noting that "unlike almost all other admissibility rules, [the rule of completeness] is inclusionary rather than exclusionary" and "manifests a commitment to override adversarial partiality in the presentation of evidence" (citation

(continued...)

As Professor Dale A. Nance has written, the common law rule of completeness generally included what he calls "the trumping function," which means that evidence necessary for completeness was admissible even though it would otherwise be inadmissible under some other rule of evidence — like the prohibition on hearsay.[20] Thus, under the common law, an opponent is generally permitted to introduce hearsay in order to complete a truncated statement that would otherwise be misleading.[21]

Although courts were fairly uniform in permitting the admission of hearsay under the common law rule of completeness, courts were not uniform in allowing an opponent to *accelerate* completion of the statement by requiring the proponent to introduce the completing material.[22] Courts were often reluctant to permit this type of

---

[19]  (...continued)
omitted)); *United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019) ("[T]he doctrine of completeness arose to permit a party against whom a part of a writing or utterance has been introduced to 'in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect' of the whole." (quoting 7 *Wigmore on Evidence* § 2113, at 653 (Chadbourn rev. ed. 1978))).

[20]  Dale A. Nance, *A Theory of Verbal Completeness*, 80 Iowa L. Rev. 825, 839-40 (1995).

[21]  Wright & Graham, *Federal Practice and Procedure* § 5072, at 387-88; Daniel J. Capra & Liesa L. Richter, *Evidentiary Irony and the Incomplete Rule of Completeness:  A Proposal to Amend Federal Rule of Evidence 106*, 105 Minn. L. Rev. 901, 909 (2020); *see also* 1 Edward W. Cleary et al., *McCormick on Evidence* § 56, at 131 (2d ed. 1972) (the treatise in effect at the time of the adoption of Federal Evidence Rule 106 and Alaska Evidence Rule 106).

[22]  Wright & Graham, *Federal Practice and Procedure* § 5072, at 389; Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. at 908.

interruption and instead generally required the opponent to complete the statement during cross-examination or during the opponent's own case.[23]

Federal Evidence Rule 106, on which the Alaska rule is based, was intended to address this timing issue.[24] The original version of the federal rule, which is nearly identical to the current Alaska rule, provided that, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."[25]

By its plain language, the federal rule appears to incorporate the trumping function of the common law rule of completeness, although there is no explicit mention

---

[23] Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. at 907-08 (comparing "compulsory completeness," which required the proponent to "present the completing portion of a statement during her initial presentation," and "optional completeness," which permitted the opponent to present the completing portion themselves, either on cross-examination or later during their own case); *see also* Wright & Graham, *Federal Practice and Procedure* § 5072, at 389.

[24] Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. at 911 ("The principal advancement of the codification [of the rule of completeness] was the creation of a right to interrupt a proponent's preferred presentation of his case to require him to introduce completing information 'at that time.'").

[25] Former Fed. R. Evid. 106 (1975). The language of the federal rule has since been twice amended, although neither change was substantive. The current rule reads, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time."

As discussed later in this opinion and in the concurrence, amendments to the federal rule are scheduled to go into effect on December 1, 2023. These amendments will expressly reflect that statements that are otherwise inadmissible hearsay and all oral statements are admissible for completion purposes.

of admissibility. The rule provides that an adverse party "may require" the introduction "of *any* other part" or "*any* other writing or recorded statement," while also fixing the timing problem that existed under the common law by providing that this complementary evidence may be admitted "at that time" (*i.e.*, at the time the original evidence is introduced).[26] In addition, the touchstone of the rule is "fairness," and fairness would seemingly require the admission of hearsay under some circumstances.[27]

The original commentary to the federal rule — the Advisory Committee on Evidence Rules's Note to Federal Evidence Rule 106 — likewise does not contain an explicit mention of the common law trumping function.[28] There are nonetheless some indications in the Advisory Committee's Note that the rule was intended to serve this purpose. For instance, the Note begins by explaining that the rule "is an expression of

---

[26] Fed. R. Evid. 106 (emphasis added).

[27] A classic example of the unfairness of the restrictive interpretation of Evidence Rule 106 (discussed by Professors Capra and Richter) is where the prosecution introduces a defendant's confession to buying the firearm used to commit the charged murder, but omits the defendant's accompanying statement that he sold the weapon months before the murder. Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. at 901-02.

*See* Report of the Advisory Committee on Evidence Rules (May 15, 2022), *contained in* Judicial Conference Standing Committee on Rules of Practice and Procedure Agenda Book [hereinafter "Standing Committee Agenda Book"], at 868 (June 7, 2022), https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf ("Simple notions of fairness, already embodied in [Federal] Rule 106, dictate that a misleading presentation cannot stand unrebutted.").

[28] Wright & Graham, *Federal Practice and Procedure* § 5078.1, at 521 ("The Advisory Committee's Note says nothing about the use of inadmissible evidence for completeness.").

the rule of completeness."[29]  The Note then states that Federal Evidence Rule 106 is based on two considerations:  "The first is the misleading impression created by taking matters out of context.  The second is the inadequacy of repair work when delayed to a point later in the trial."  In doing so, the Note cites to *McCormick on Evidence* § 56 and California Evidence Code § 356 — two sources that, at the time of the rule's enactment and continuing to today, endorse the view that completing statements that would otherwise constitute hearsay when introduced by an opponent are admissible.[30]

---

[29]  The entire Advisory Committee's Note to the original version of Federal Evidence Rule 106 reads:

> The rule is an expression of the rule of completeness.  McCormick § 56.  It is manifested as to depositions in Rule 32(a)(4) of the Federal Rules of Civil Procedure, of which the proposed rule is substantially a restatement.

> The rule is based on two considerations.  The first is the misleading impression created by taking matters out of context.  The second is the inadequacy of repair work when delayed to a point later in the trial.  See McCormick § 56; California Evidence Code § 356.  The rule does not in any way circumscribe the right of the adversary to develop the matter on cross-examination or as part of his own case.

> For practical reasons, the rule is limited to writings and recorded statements and does not apply to conversations.

[30]  *See* 1 Edward W. Cleary et al., *McCormick on Evidence* § 56, at 130-31 (2d ed. 1972); 1 Robert P. Mosteller et al., *McCormick on Evidence* § 56, at 468-69 (8th ed. 2020) ("It is sometimes stated that the additional material may be introduced only if it is otherwise admissible.  However, as a categorical rule, that statement is unsound." (citations omitted)); Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. at 944-45 (noting that the drafters of Federal Evidence Rule 106 maintained "textual silence on the hearsay issue while citing in Committee notes to the California completeness provision, which allows hearsay

(continued...)

That said, because there is no explicit mention of admissibility in the language or commentary of the rule, "whether evidence that is inadmissible under one of the other Evidence Rules can be admitted for completeness under Rule 106 has proved to be one of the most contentious issues among the writers and courts."[31]

Following the enactment of the Federal Rules of Evidence in 1975, two competing schools of thought regarding Federal Evidence Rule 106 emerged. The first originated with noted jurist and former member of the federal Advisory Committee on Evidence Rules, Judge Jack Weinstein. According to Professors Wright and Graham, Judge Weinstein's influential treatise "took the position that the Rule did not admit otherwise inadmissible evidence."[32] However, it remains unclear why Judge Weinstein reached this conclusion because the Weinstein treatise is in loose-leaf format, and thus, as Wright and Graham explain, early versions have "disappear[ed] from library shelves."[33]

---

[30] (...continued)
to be admitted for its truth when necessary to complete"); *see also Carson v. Facilities Dev. Co.*, 686 P.2d 656, 668 (Cal. 1984) (in bank) (stating that California Evidence Code § 356 "permits admission of the remainder of an otherwise inadmissible conversation," and that a hearsay objection "will be overruled . . . if the remainder of the conversation . . . has 'some bearing upon, or connection with, the admission or declaration in evidence.'" (quoting *Rosenberg v. Wittenborn*, 3 Cal. Rptr. 459, 464 (Cal. Dist. App. 1960))).

[31] *See* Wright & Graham, *Federal Practice and Procedure* § 5078.1, at 518-19.

[32] *Id.* at 525.

[33] *Id.* at 525 n.38. We, too, were unable to access Weinstein's original treatise. But an updated version of the first edition (dated September 1986) confirmed Weinstein's restrictive view of Rule 106, stating that "[R]ule [106] covers an order of proof problem; it is not designed to make something admissible that should be excluded." 1 Jack B. Weinstein et al., *Weinstein's Evidence* ¶¶ 106[01]-[02], at 106-13 (1st ed. update 1986). As we note
(continued...)

Regardless of the reason for Judge Weinstein's position, courts and commentators subsequently echoed his view on the matter.[34] In *United States v. Costner*, for example, the Sixth Circuit, relying directly on Weinstein's treatise and providing little else to defend its position, held that Rule 106 "covers an order of proof problem; it is not designed to make something admissible that should be excluded."[35]

The second edition of the Weinstein treatise retreated from this restrictive reading and instead takes the position that Federal Evidence Rule 106 is unclear and that the cases are divided.[36] But some courts continued to adhere to Weinstein's original

---

[33] (...continued) later, this line is not included in the second edition of Weinstein's treatise. *See* 1 Jack B. Weinstein et al., *Weinstein's Federal Evidence* §§ 106.03[1]-.04[1], at 106-15 to 106-18 (2d ed. 1997; updated Mar. 2023).

[34] Wright & Graham, *Federal Practice and Procedure* § 5078.1, at 525 n.39 (collecting authorities); *see, e.g.*, *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014) (stating that Rule 106 does not "render admissible . . . evidence which is otherwise inadmissible under the hearsay rules"); *Dolo v. State*, 942 N.W.2d 357, 364 (Minn. 2020) ("Rule 106 . . . addresses the timing of when certain additional material is admitted. The rule does not govern its admissibility — in fact, the additional material must be independently admissible."); *United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013) (stating that "Rule 106 covers an order of proof problem; it is not designed to make something admissible that should be excluded"). *But see United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988) (stating that the government's requested portions, "while perhaps not admissible standing alone, are admissible as a remainder of a recorded statement").

[35] *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) (citing 1 *Weinstein's Evidence* ¶ 106[01] (1981)).

[36] *See* Wright & Graham, *Federal Practice and Procedure* § 5078.1, at 525 n.38; *see also* Weinstein et al., *Weinstein's Federal Evidence* § 106.03[1], at 106-15 (2d ed. 1997; updated Mar. 2023) (noting that the language of Federal Evidence Rule 106 is ambiguous as to "whether the rule addresses merely the timing for the introduction of admissible

(continued...)

view on the matter. The Sixth Circuit, for example, has continued to affirm *Costner*, even in cases where the panel agrees that the government's selective presentation of evidence was "unfair" — finding that "this court's bar against admitting hearsay under Rule 106 leaves defendants without redress."[37]

But a second school of thought also emerged: a number of federal and state courts have expressly held that Rule 106 authorizes the admission of otherwise inadmissible hearsay when necessary to prevent a misleading impression caused by the admission of only a partial statement.[38] This school of thought first arose in the courts,

---

[36]  (...continued)
evidence or whether it authorizes the admission of otherwise inadmissible evidence").

[37]  *Adams*, 722 F.3d at 827. The panel appeared to affirm *Costner* reluctantly, suggesting in a footnote "that should th[e] court sitting en banc address whether Rule 106 requires that the other evidence be otherwise admissible, it might consider" a series of authorities criticizing the restrictive interpretation of Rule 106. *Id.* at 826 n.31.

[38]  Federal courts: *See, e.g.*, *United States v. Altvater*, 954 F.3d 45, 49 (1st Cir. 2020) ("[T]he rule of completeness allows for the admission of otherwise inadmissible statements only when such statements are 'explanatory' or 'relevant to the admitted passages.'" (quoting *United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019))); *United States v. Sweiss*, 814 F.2d 1208, 1211-12 (7th Cir. 1987) (explaining that a hearsay statement is admissible for completion purposes under Rule 106 if the statement: (1) explains the admitted evidence; (2) puts the evidence in context; (3) is not itself misleading; and (4) will facilitate a fair and impartial understanding of the evidence); *United States v. Williston*, 862 F.3d 1023, 1038-39 (10th Cir. 2017) (same); *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986) (recognizing that "Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously").

State courts: *See e.g.*, *People v. Short*, 425 P.3d 1208, 1219-20 (Colo. App. 2018) (collecting authorities for the proposition that otherwise inadmissible hearsay may be admitted under Rule 106 and concluding that the trial court "properly determined that
(continued...)

but it has been articulated and defended most effectively by Professor Daniel Capra, the long-serving Reporter to the United States Judicial Conference's Advisory Committee on Evidence Rules, and his co-author, Professor Liesa Richter, the Academic Consultant to the Advisory Committee. Their law review article on the topic provides a thorough history of Federal Evidence Rule 106 and a strong defense of the position that Rule 106 is a rule of *both* timing and admissibility.[39]

---

[38] (...continued)
[defendant's] otherwise inadmissible self-serving hearsay was admissible" under the rule); *State v. Norman P.*, 186 A.3d 1143, 1154 (Conn. 2018) (stating that the "express language" of Connecticut's version of Rule 106 "requires the trial court to admit the remainder of a statement, when necessary to provide context, 'whether or not otherwise inadmissible . . .'" (citing Conn. Code. Evid. § 1-5(b))); *Hawkins v. State*, 884 N.E.2d 939, 947-48 (Ind. App. 2008) (noting that Rule 106 "even applies to self-serving hearsay statements," but also stating that the decision to admit this hearsay "should be and is left to the trial court's discretion"); *State v. Keith*, 618 A.2d 291, 293 (N.H. 1992) ("Although Rule 106 is not an automatic rule of admissibility, we have held that a trial court may admit otherwise inadmissible evidence to counter a misleading advantage if a party has 'opened the door' to such evidence." (citation omitted)); *In re Commitment of Sugden*, 795 N.W.2d 456, 466 (Wis. App. 2010) (stating that Wisconsin's version of Rule 106 is "often called 'the rule of completeness,'" and that this rule may, in certain instances, "require[] that an additional portion be introduced into evidence even if it is otherwise inadmissible" (citing *State v. Anderson*, 600 N.W.2d 913 (Wis. App. 1999))); *see also State v. Gray*, 511 S.E.2d 873, 875, 878 (W. Va. 1998) (finding no abuse of discretion where trial court admitted complete police report under West Virginia's Evidence Rule 106 over defense's hearsay objection); *Hayes v. State*, 935 P.2d 700, 706 (Wyo. 1997) (same under Wyoming's Evidence Rule 106).

[39] *See* Daniel J. Capra & Liesa L. Richter, *Evidentiary Irony and the Incomplete Rule of Completeness: A Proposal to Amend Federal Rule of Evidence 106*, 105 Minn. L. Rev. 901 (2020).

As Professors Capra and Richter note, the D.C. Circuit Court of Appeals in *United States v. Sutton* set out a particularly well-reasoned articulation of that view.[40] The D.C. Circuit provided five reasons for concluding that Rule 106 authorizes the admission of otherwise inadmissible hearsay if necessary for completion purposes.

First, the structure of the evidence rules supports the conclusion that Rule 106 is "concerned with more than merely the order of proof."[41] In particular, Federal Evidence Rule 106 is located in Article I — the "General Provisions" section — rather than as part of Federal Evidence Rule 611, which governs the order in which evidence is presented.[42] (Alaska Evidence Rule 106 is also located in Article I of the Alaska Evidence Rules, and Alaska Evidence Rule 611 similarly governs the "Mode and Order of Interrogation and Presentation.")

Second, Federal Evidence Rule 106 does not contain the phrase "except as otherwise provided by these rules" — a phrase that appears in every major evidentiary rule of exclusion — which suggests that Rule 106 should not be interpreted so restrictively.[43] (Alaska Evidence Rule 106 similarly does not contain this phrase.)

---

[40] *See id.* at 915-16 (discussing *United States v. Sutton*, 801 F.2d 1346 (D.C. Cir. 1986)).

[41] *Sutton*, 801 F.2d at 1368.

[42] *Id.*

[43] *Id.*; *see also* 1 Barbara E. Bergman & Nancy Hollander, *Wharton's Criminal Evidence* § 4:10, at 318 (15th ed. 1997) (noting that the phrase "except as otherwise provided by these rules," which appears in every major rule of exclusion in the Federal Rules of Evidence, does not appear in Rule 106, thus supporting the view that Rule 106 authorizes the introduction of otherwise inadmissible evidence if excluding the evidence would result in unfairness); 21A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure, Federal Rules of Evidence* § 5078.1, at 520 & n.6 (2d ed. 2005; updated Daniel
(continued...)

Third, prior to the enactment of the rule, the Department of Justice specifically asked the Senate Judiciary Committee (in a letter to the Chairman of the Committee) to add language to Federal Evidence Rule 106 stating that it was limited to evidence that was "otherwise admissible," but Congress did not add any such language.[44]

Fourth, the Advisory Committee's Note to Federal Evidence Rule 106 shows that Rule 106 was modeled on California's codification of the rule of completeness and the federal rule of civil procedure governing partial use of depositions, both of which are not restricted by other rules of evidence.[45]

Fifth, and most importantly, Rule 106 can only fulfill its promise of "fairness" if it authorizes the admission of otherwise inadmissible hearsay when that hearsay is necessary to correct a misleading impression. "A contrary construction," the court wrote, "raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court."[46]

---

[43] (...continued)
D. Blinka ed., Apr. 2023) (citing federal rules of evidence that contain this clause).

[44] *Sutton*, 801 F.2d at 1368 n.17; *see also* Minutes of Advisory Committee on Rules of Evidence, at 10 (May 21-26, 1970), https://www.uscourts.gov/sites/default/files/fr_import/EV05-1970-min.pdf; Wright & Graham, *Federal Practice and Procedure* § 5078.1, at 523 & n.32 (discussing the letter by the Department of Justice to the Chairman of the Senate Judiciary Committee and concluding that the "most plausible" interpretation of the Senate's decision not to adopt the Department of Justice's proposed limitation on Rule 106 is that the Senators "agreed with the Justice Department's reading of the Rule, but disagreed that this policy should be changed").

[45] *Sutton*, 801 F.2d at 1368 n.17; *see* Cal. Evid. Code § 356; Fed. R. Civ. P. 32(a)(4); *see also* Wright & Graham, *Federal Practice and Procedure* § 5078.1, at 522.

[46] *Sutton*, 801 F.2d at 1368.

These two schools of thought both emerged decades ago, not long after the federal rules were enacted in 1975. (*Costner*, for example, was issued in 1983; *Sutton* was issued in 1986.) But the United States Supreme Court has never issued a decision resolving the issue.

The closest the Supreme Court came was in *Beech Aircraft Corporation v. Rainey*.[47] In *Beech Aircraft*, the Court held that the trial court's refusal to allow the plaintiff to present a more complete picture of a letter he had written resulted in a "distorted and prejudicial impression" of the letter.[48] But while the Court briefly discussed Federal Evidence Rule 106 — stating that Rule 106 "partially codified" the common law rule of completion — the Court found it "unnecessary to address" the application of Rule 106 to the case.[49] Rather, the Court relied on the rules of relevancy to reach its conclusion, stating that "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402."[50] The Court also noted that the proffered evidence was not hearsay because it was not offered for the truth of the matter asserted.[51] Thus, *Beech Aircraft* offers little guidance in resolving the issue in this case.

---

[47]   *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988).

[48]   *Id.* at 170.

[49]   *Id.* at 171-72.

[50]   *Id.* at 172.

[51]   *Id.* at 173 n.18.

Nonetheless, the language in the *Beech Aircraft* opinion stating that Rule 106 "partially codified" the doctrine of completeness has led some to conclude that "the Court impliedly held that Rule 106 [did] not repeal the common law completeness doctrine."[52] This "common law survives" theory has been proposed as the solution to the competing interpretations of Rule 106 discussed above, because it would allow evidence necessary for completeness to be admitted over a hearsay objection.

But if that is what the Supreme Court intended, that is not what happened. As Wright and Graham have acknowledged, since "the decision can be read more narrowly," the practical reality is that "many courts have ignored *Beech Aircraft* or read the discussion of Rule 106 and common law completeness as dicta."[53]

---

[52] 21A Charles Alan Wright & Kenneth W. Graham Jr., *Federal Practice and Procedure, Federal Rules of Evidence* § 5072.1, at 401 (2d ed. 2005; updated Daniel D. Blinka ed., Apr. 2023). The *Beech Aircraft* Court did not further elaborate on its statement that "[t]he Federal Rules of Evidence have partially codified the doctrine of completeness in Rule 106." *Beech Aircraft*, 488 U.S. at 171-72; *see* Wright & Graham, *Federal Practice and Procedure* § 5078.1, at 519 n.3 (explaining confusion over the holding in *Beech Aircraft*).

[53] Wright & Graham, *Federal Practice and Procedure* § 5072.1, at 401 & n.76. At least one court has held that the "common law survives" approach is barred by Federal Evidence Rule 802, which provides that "[h]earsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." *United States v. Oloyede*, 933 F.3d 302, 313-14 (4th Cir. 2019) (noting, in connection with the defendant's request for admission of his completing oral statement, "While we doubt that a residual common law rule of completeness survives Rule 106's codification, we hold [relying on Federal Evidence Rule 802] that any such common law rule cannot be used to justify the admission of inadmissible hearsay"); *see also* Alaska R. Evid. 802 ("Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Alaska Supreme Court, or by enactment of the Alaska Legislature.").

The issue therefore remained unresolved at the federal level until recently. In the spring of 2021, the Advisory Committee on Evidence Rules unanimously approved for public comment amendments to Federal Evidence Rule 106.[54] The proposed amendments clarify that Rule 106 permits an adverse party to introduce completing evidence "over a hearsay objection" — in other words, the amendments clarify that Rule 106 is a rule of *both* timing and admissibility.[55] The Committee received very few comments on this proposed change, and all of those comments were in favor of the change.[56] (As discussed in the concurrence to this opinion, the proposed amendments also clarify that Federal Evidence Rule 106 applies to all statements, including unrecorded oral statements.)

Following the public comment period, in the spring of 2022, the Advisory Committee unanimously approved the proposed amendments, and recommended that they be approved by the Standing Committee on Rules of Practice and Procedure and

---

[54] *See* Report of the Advisory Committee on Evidence Rules (May 15, 2022), *contained in* Standing Committee Agenda Book, at 867 (June 7, 2022), https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf.

[55] *See* Proposed Amendments to Federal Evidence Rule 106 & Committee Note (Appendix A to the Report of the Advisory Committee on Evidence Rules, dated May 15, 2022), *contained in* Standing Committee Agenda Book, at 879 (June 7, 2022), https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf.

[56] *See* Report of the Advisory Committee on Evidence Rules, *contained in* Standing Committee Agenda Book, at 867; Proposed Amendments to Federal Evidence Rule 106 & Committee Note, *contained in* Standing Committee Agenda Book, at 883-85.

referred to the Judicial Conference of the United States.[57] In a Committee Note accompanying the proposed amendments, the Advisory Committee — citing the D.C. Circuit's decision in *United States v. Sutton* — stated: "The Committee has determined that the rule of completeness, grounded in fairness, cannot fulfill its function if the party that creates a misimpression about the meaning of a proffered statement can then object on hearsay grounds and exclude a statement that would correct the misimpression."[58]

The Standing Committee approved the proposal and recommended that the Judicial Conference approve the amendments and transmit them to the United States Supreme Court for consideration.[59] In April 2023, following approval and transmission by the Judicial Conference, the Supreme Court issued an order adopting the amendments to Federal Evidence Rule 106 and submitting them to Congress.[60] Barring contrary

---

[57] *See* Report of the Advisory Committee on Evidence Rules, *contained in* Standing Committee Agenda Book, at 868.

[58] Proposed Amendments to Federal Evidence Rule 106 & Committee Note, *contained in* Standing Committee Agenda Book, at 879-80 (citing *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. 1986) (noting that "[a] contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court")).

[59] *See* Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure, at 22, 24 (Sept. 2022), https://www.uscourts.gov/sites/default/files/sept_2022_jcus_rules_report_final_for_website.pdf.

[60] *See* U.S. Sup. Ct. Order Amending Fed. Rules of Evidence & Letters from C.J. John G. Roberts Jr., U.S. Sup. Ct., to Rep. Kevin McCarthy, Speaker of the U.S. House of Representatives, and Vice President Kamala D. Harris, President of the U.S. Senate (Apr. 24, 2023), https://www.supremecourt.gov/orders/courtorders/frev23_5468.pdf; *see also* Memorandum Transmitting Proposed Amendments to the Fed. Rules of Evidence from J. Roslynn R. Mauskopf, Sec'y of the U.S. Jud. Conf., to the C.J. and Associate JJ.

(continued...)

Congressional action, the amendments will go into effect on December 1, 2023.[61]

The amended rule reads as follows (with deleted language noted with strike-outs and added language underlined):

> If a party introduces all or part of a ~~writing or recorded~~ statement, an adverse party may require the introduction, at that time, of any other part—or any other ~~writing or recorded~~ statement—that in fairness ought to be considered at the same time. <u>The adverse party may do so over a hearsay objection.</u>[62]

*The history of Alaska Evidence Rule 106 and our prior analysis of the rule*

We now return to the history of Alaska Evidence Rule 106 and our prior cases addressing the scope of the rule — namely, *Stoneking* and *Sipary*.

The Alaska Rules of Evidence were prepared by the Advisory Committee on the Rules of Evidence and adopted by the Alaska Supreme Court in 1979 — four years after the enactment of the Federal Rules of Evidence.[63] Alaska Evidence Rule 106 — located in Article I of the Rules ("General Provisions") — is nearly identical to the original version of the federal rule and reads as follows:

---

[60] (...continued)
of the U.S. Sup. Ct. (Oct. 19, 2022), contained in U.S. Courts Pending Rules and Forms Amendments, Cong. Package, at 199 (Apr. 2023), https://www.uscourts.gov/sites/default/files/2023_congressional_package_april_24_2023_0.pdf.

[61] *See* 28 U.S.C. § 2074.

[62] Proposed Amendments to Federal Evidence Rule 106 & Committee Note, *contained in* Standing Committee Agenda Book, at 879; *see also* United States Supreme Court Order Amending Federal Rules of Evidence, at 1.

[63] Alaska Supreme Court Order No. 364 (eff. Aug. 1, 1979).

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

As we previously noted, early cases from this Court could be read to suggest that Alaska Evidence Rule 106 authorizes the admission of hearsay if necessary for completeness.[64]   Other cases, however, have declared that Rule 106 itself has a restrictive scope — *i.e.*, that it is solely a rule of timing and not admissibility (although we left open the question of whether hearsay statements might be admissible under a common law theory of completion).

In *Stoneking*, for example, we stated that Rule 106 "does not make admissible statements that would otherwise be inadmissible; it is meant only to allow contemporaneous admission of evidence that would ordinarily not be admissible until later stages of the trial."[65]   We summarily cited to the Commentary to Alaska Evidence Rule 106 but offered no further analysis on this point.   Ultimately, however, our assertion regarding the scope of Rule 106 made no difference to the outcome of the case; we instead concluded that nothing about the omitted statements in that case "appear[ed]

---

[64]   *See, e.g.*, *Stumpf v. State*, 749 P.2d 880, 899 (Alaska App. 1988) ("Generally, defendants may not offer their own statements into evidence because they are hearsay.  When the state, however, presents one part of a conversation or statement, or one conversation in a series, the defendant may be entitled to offer or require the state to offer, the rest of the statement or conversations in order to set the context for statements already in evidence." (citation omitted)); *Brannen v. State*, 798 P.2d 337, 340 (Alaska App. 1990) ("[B]ecause the edited portion of the tape that was played for the jury was not misleading or confusing, the exculpatory statements that were excised as hearsay were not necessary or admissible on grounds of testimonial completeness.").

[65]   *Stoneking v. State*, 800 P.2d 949, 951-52 (Alaska App. 1990).

to have been necessary to clarify, explain, or provide context to the [recording] that the jury heard."[66]

We expanded on our discussion of Evidence Rule 106 in *Sipary* — our most extensive discussion of the rule to date.

The brief facts of *Sipary* are as follows: The defendant was charged with first-degree assault. At trial, the trial court allowed the State to introduce the defendant's admissions to striking the victim, but precluded, on hearsay grounds, the introduction of other statements by the defendant in which, according to defense counsel, the defendant asserted that he was acting in self-defense.[67] The defendant was convicted, and on appeal, he argued that the trial court's ruling violated Alaska Evidence Rule 106 and the rule of completeness.

We ultimately concluded, after an extensive review of the record, that the facts of Sipary's case "[did] not raise an issue of completeness."[68] But we first examined the rule of completeness and Alaska Evidence Rule 106.

We initially noted the United States Supreme Court's assertion in *Beech Aircraft* that Federal Evidence Rule 106 only "partially codified" the common law rule of completeness, and we interpreted this language as meaning "that there are instances in which evidence will be admissible under the rule of completeness irrespective of whether the evidence in question also qualifies for admission under Federal Evidence

---

[66] *Id.* at 952.

[67] *Sipary v. State*, 91 P.3d 296, 299 (Alaska App. 2004).

[68] *Id.* at 301-02.

Rule 106."[69]  (As we have already explained, this "common law survives" interpretation of *Beech Aircraft*, although arguable, has never been widely adopted by federal courts.)

We then turned to Alaska Evidence Rule 106, asserting that the "distinction between the common-law rule of completeness and Evidence Rule 106 is even more clearly delineated in Alaska law."[70]  Relying exclusively on *Stoneking* and the first two paragraphs of the Commentary to Alaska Evidence Rule 106, we stated that "Rule 106 was designed to solve a problem of timing, not to enhance the admissibility of evidence."[71]

We nonetheless asserted that, based on the Commentary, "it appears that the drafters of Rule 106 assumed" that the common law rule of completeness survived the codification of Alaska's Rules of Evidence.[72]  We did not further elaborate on this assertion.  But we did note that this left unanswered the question of whether a litigant might be entitled to introduce, under the *common law* rule of completeness, complementary portions of their statements that were otherwise hearsay.[73]

---

[69]  *Id.* at 300.

[70]  *Id.*

[71]  *Id.*

[72]  *Id.*

[73]  *Id.* at 301.  To the extent we suggested in *Sipary* that there was a meaningful divide in the *common law* as to whether hearsay was admissible for completion purposes, we misspoke.  As we noted above, courts were — and remain — divided on whether *Evidence Rule 106* directly permits the introduction of otherwise inadmissible evidence for purposes of completeness.  But there is no serious dispute that the common law rule of completeness permitted the introduction of otherwise inadmissible evidence. 21A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure, Federal Rules of Evidence* § 5072, at 387-88 (2d ed. 2005; updated Daniel D. Blinka ed., Apr. 2023).

Ultimately, we did not need to answer this question in *Sipary* because, as in *Stoneking*, we concluded that the defendant's statements were not necessary for completion purposes.[74] That is, even assuming the hearsay rule did not bar the admission of completing evidence, the statements Sipary sought to introduce were not necessary to provide context to the admitted statements or avoid misleading the jury — mainly because the prosecution witnesses did not materially mischaracterize Sipary's out-of-court statements and those statements did not relate to the particular assaultive conduct charged by the State.[75]

(Notably, even though we announced that we were declining to decide whether hearsay statements could be admitted for completion purposes, we nonetheless indicated that if the statements Sipary sought to introduce *had* been directly tied to his assertions of self-defense (and thus necessary for completeness), then those statements — which were clearly hearsay when offered by Sipary — *would* have been admissible once the prosecutor chose to introduce other, incriminatory portions of the defendant's statements.[76])

We have closely examined *Stoneking*, *Sipary*, and our other prior cases interpreting Alaska Evidence Rule 106. Having done so, we conclude that our

---

[74]  *Sipary*, 91 P.3d at 301-02.

[75]  *Id.* at 307-11.

[76]  *Id.* at 299, 301; *see also State v. Warren*, 732 A.2d 1017, 1020 (N.H. 1999) ("Because the State's presentation of [the officer's] testimony created the misleading impression that the defendant was confessing moments after the incident rather than offering an explanation consistent with his claim of self-defense, we conclude that the trial court's failure to admit the completing portion prejudiced the defendant's case and constituted an abuse of discretion.").

discussions regarding the scope of Alaska Evidence Rule 106 were dicta and in any event, were incorrect.

We acknowledge that we have cited *Stoneking* and *Sipary* several times since those cases were decided, and we have stated or implied that our discussions of Rule 106 were "holdings."[77]  But the discussions of Rule 106 in both *Stoneking* and *Sipary* were ultimately "not necessary to [our] decision in the case."[78]  In both cases, as well as in every case relying on them, we ultimately ruled — unlike in this case — that the excluded statements were not necessary to clarify or explain any admitted statements.[79]  In other words, we ruled that the statements would not have been admissible under Rule 106 *even if* Rule 106 was a rule of admissibility.

---

[77]  *See, e.g.*, *State v. McDonald*, 872 P.2d 627, 651 (Alaska App. 1994); *Peter v. State*, 2004 WL 1254089, at *4 (Alaska App. June 9, 2004) (unpublished).

[78]  *See Scheele v. Anchorage*, 385 P.2d 582, 583 (Alaska 1963) (describing obiter dictum as a statement that "was not necessary to the decision in the case"), *superseded by statute on other grounds*, AS 09.65.070; "Obiter dictum," *Black's Law Dictionary* (11th ed. 2019) ("A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive).").

[79]  *See Sipary*, 91 P.3d at 301-02; *Stoneking v. State*, 800 P.2d 949, 952 (Alaska App. 1990); *McDonald*, 872 P.2d at 651; *D'Antorio v. State*, 837 P.2d 727, 736 (Alaska App. 1992); *Alto v. State*, 2013 WL 1558157, at *3 (Alaska App. Apr. 10, 2013) (unpublished); *Bavilla v. State*, 2012 WL 1959557, at *9 (Alaska App. May 23, 2012) (unpublished); *Adams v. State*, 2008 WL 1914340, at *4 (Alaska App. Apr. 30, 2008) (unpublished); *Morris v. State*, 2004 WL 1737561, at *5 (Alaska App. Aug. 4, 2004) (unpublished); *Peter*, 2004 WL 1254089, at *3; *see also Strumsky v. State*, 69 P.3d 499, 505 (Alaska App. 2003) (holding that the defendant's argument regarding the rule of completeness was unpreserved); *Smart v. State*, 2019 WL 12044102, at *1 (Alaska App. Apr. 10, 2019) (unpublished summary disposition).

But more importantly, even if *Stoneking* and *Sipary* established binding precedent on the question of whether Rule 106 is solely a rule of timing, we would conclude that the precedent should be overruled under the test for determining whether we should adhere to *stare decisis* — because the question was wrongly decided, and because more good than harm would come from clarifying the law on this point.[80]

First, it is unclear why both cases relied almost exclusively on the Commentary to Alaska Evidence Rule 106. As a general matter, the Commentary — which was prepared by Professor Stephen A. Saltzburg, the Reporter for the Alaska Rules of Evidence — is considered persuasive authority in interpreting the Alaska Rules of Evidence.[81]

But the Commentary to Alaska Evidence Rule 106 is unique. At the end of the Commentary to Rule 106 is a "Note" explaining that the drafters of Alaska's rule — the Alaska Supreme Court's Advisory Committee on the Rules of Evidence — "voted to adopt, in lieu of the Reporter's Comment to this rule, the commentary contained in the Advisory Committee's note to Federal Rule 106[.]"[82] In other words, the drafters of the

---

[80]    *See State v. Dunlop*, 721 P.2d 604, 610 (Alaska 1986) (stating that a court may depart from precedent when the court is "clearly convinced the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent").

[81]    *See, e.g.*, *Allen v. State*, 945 P.2d 1233, 1239-43 (Alaska App. 1997). The Commentary itself was never formally adopted or approved by the Alaska Supreme Court. Alaska R. Evid. intro. cmt. para 1.

[82]    Alaska R. Evid. 106 cmt. note. This Note also included an additional piece of commentary that is not relevant here, addressing "issues of relevancy and privilege." The Note explained that "the problem of deletion of privileged or irrelevant material from a writing whose admission is sought under . . . Rule 106 should appropriately be dealt with by
(continued...)

Alaska Evidence Rules expressly declined to adopt the Commentary prepared by Professor Saltzburg in connection with Rule 106. Instead, the drafters — who adopted a version of Evidence Rule 106 almost identical to the federal rule — voted to adopt the commentary contained in the *federal* Advisory Committee's Note to Federal Evidence Rule 106.[83]

It is not clear why the drafters of the Alaska Evidence Rules declined to adopt Professor Saltzburg's Commentary to Rule 106. But given this Note, our primary guide to interpreting Alaska Evidence Rule 106 should be the *federal* Advisory Committee's Note to Federal Evidence Rule 106 — not Professor Saltzburg's Commentary. Yet neither *Stoneking* nor *Sipary* addressed the Advisory Committee's Note to Federal Evidence Rule 106 nor grounded their analysis on that commentary or the history of the federal rule.

Moreover, even assuming that we should give weight to Professor Saltzburg's Commentary, we are uncertain why *Stoneking* and *Sipary* interpreted this Commentary as clearly expressing the view that "Rule 106 was designed to solve a problem of timing, not to enhance the admissibility of evidence."[84] There can be no doubt that the Commentary supports the first assertion — that Rule 106 was designed to

---

[82]  (...continued)
. . . the Rules of Evidence dealing with relevancy and privilege."

[83]  *Id.*; *Pingree v. Cossette*, 424 P.3d 371, 378 n.20 (Alaska 2018) (noting that "[t]he Alaska Supreme Court Committee on Rules of Evidence voted to adopt the federal advisory committee's commentary on Rule 106 as the commentary to Alaska Evidence Rule 106").

[84]  *Sipary*, 91 P.3d at 300; *see also Stoneking*, 800 P.2d at 952-53.

solve a timing problem.[85] But little in the Commentary supports the second assertion —

that the rule was *not* intended to authorize the admission of completing evidence that

would otherwise be hearsay — and there is certainly nothing in the Commentary

expressly saying so.[86]

The interpretation of Professor Saltzburg's Commentary in *Stoneking* and

*Sipary* is particularly questionable in light of his later comments on the subject. In

addition to serving as the Reporter for the Alaska Rules of Evidence, Professor Saltzburg

is one of the authors of a widely cited treatise on the Federal Rules of Evidence.[87] In that

treatise, Professor Saltzburg has written that restrictive interpretations of Rule 106 "are

misguided and contrary to the completeness principle."[88] He takes the position that

"[t]he appropriate way to resolve the hearsay issue is to hold that the party who offers

---

[85] *See* Alaska R. Evid. 106 cmt. paras. 1-2.

[86] Indeed, the Commentary provides strong support for the notion that Rule 106 addresses both timing *and* admissibility. The Commentary states that "Rule 106 creates a right to require immediate admission of a complete written or recorded statement or of all relevant portions" and explains that the rule "is designed to enable one party to correct immediately *any* misleading impression created by another party who offers part of a statement out of context." Alaska R. Evid. 106 cmt. para. 1 (emphasis added). It is difficult to imagine how the rule could accomplish this goal without authorizing the introduction of evidence when that evidence is necessary to correct a misleading impression.

[87] Alaska R. Evid. intro. cmt.; *see also* 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* (12th ed. 2019).

[88] 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02[3], at 106 (11th ed. 2015); 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02[3], at 100 (7th ed. 1998); *see also* 1 Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02[3], at 106-8 to 106-9 (12th ed. 2019) (noting that "legislative history, a fair reading of the Evidence Rules, and the placement and language of Rule 106 support the conclusion that Rule 106 can operate as a hearsay exception for completing evidence").

an incomplete statement or document forfeits any hearsay objection to completing evidence that is necessary to correct a misleading impression."[89] As the Alaska Supreme Court has noted, Professor Saltzburg was "one of the main architects of the Alaska Rules of Evidence and the [accompanying] Commentary," and his position is thus "especially persuasive."[90]

Finally, there is no need to conclude that Rule 106 was designed to *enhance* the admissibility of evidence in order to conclude that the rule authorizes the admission of otherwise inadmissible evidence for completion purposes; it is only necessary to conclude that the rule was designed to *maintain* the long-standing trumping function of the common law rule.[91]

Ultimately, our analysis of the history of Alaska Evidence Rule 106 as a whole — including our past case law, the history of the federal rule on which it is based, and the unnecessary complexity of the work-around theories courts have employed to avoid unfairness (as discussed in the next section) — leads us to conclude that our prior statements on the restrictive scope of Alaska Evidence Rule 106 are not, and should not be, controlling.

---

[89]    1 Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02[3], at 106-13 (12th ed. 2019) ("It is up to the proponent of the initial portion to decide whether to forgo that portion, or to forgo the hearsay objection to the remainder."); *see also* 1 Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02[3], at 100 (7th ed. 1998).

[90]    *See Marron v. Stromstad*, 123 P.3d 992, 1005 n.50 (Alaska 2005).

[91]    *See State v. ABC Towing*, 954 P.2d 575, 579 (Alaska App. 1998) (recognizing that "statutes are construed so as to preserve the pre-existing common law unless the legislature has clearly indicated its purpose to change that law," and citing the rule that statutes in derogation of the common law are to be narrowly construed); *see also Ray v. State*, 513 P.3d 1026, 1035 n.64 (Alaska 2022).

*The "evasions of the restrictionists"*

Having discussed the competing interpretations of Evidence Rule 106 at the federal level and our prior case law on this issue in Alaska, we must now discuss one additional aspect of the legal landscape: the various attempts by courts to avoid the most egregious consequences of the restrictive interpretation of Rule 106, which Professors Wright and Graham have aptly termed the "evasions of the restrictionists."[92]

As we have explained, the restrictive interpretation of Evidence Rule 106 as a rule only of timing can lead to unfair results. Some jurisdictions adhering to a restrictive construction of Rule 106 have adopted various mechanisms to "escape the worst consequences" of that construction — *i.e.*, to escape the fact that such a construction would allow a party to introduce a misleading version of an opponent's statements and would then prohibit the opponent from correcting that misleading impression.[93]

The most notable of these solutions, endorsed by our dicta in *Sipary*, is the view that the common law rule of completeness survived the enactment of Evidence Rule 106.[94] But as the federal Advisory Committee recently noted in connection with its proposal to resolve the existing circuit split by amending Federal Evidence Rule 106 to explicitly permit completion over a hearsay objection, the notion that the common law survived the codification of Evidence Rule 106 has created confusion and added

---

[92] 21A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure, Federal Rules of Evidence* § 5078.3, at 540 (2d ed. 2005; updated Daniel D. Blinka ed., Apr. 2023).

[93] *See id.* at § 5078.1, at 531.

[94] *Sipary v. State*, 91 P.3d 296, 299-300 (Alaska App. 2004).

unnecessary complexity. According to the Committee Note accompanying the proposed rule amendments:

> There is no other rule of evidence that is interpreted as coexisting with common-law rules of evidence, and the practical problem of a rule of evidence operating with a common-law supplement is apparent—especially when the rule is one, like the rule of completeness, that arises most often during the trial.[95]

Some jurisdictions have also suggested that a statement introduced for completeness is not hearsay because it is not being admitted for the truth of the matter asserted.[96] But as Professors Capra and Richter have noted, "Admitting completing statements on the same basis and for the same purpose as the partially admitted

---

[95] Proposed Amendments to Federal Evidence Rule 106 & Committee Note (Appendix A to the Report of the Advisory Committee on Evidence Rules, dated May 15, 2022), *contained in* Standing Committee Agenda Book, at 882 (June 7, 2022), https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf; *see also* Report of the Advisory Committee on Evidence Rules (May 15, 2022), *contained in* Standing Committee Agenda Book, at 868 (June 7, 2022), https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf ("What has been particularly confusing to courts and practitioners is that Rule 106 has been considered a 'partial codification' of the common law — meaning that the parties must be aware that common law may still be invoked. As stated in the Committee Note, the amendment is intended to displace the common law, just as the common law has been displaced by all of the other Federal Rules of Evidence.").

[96] *See, e.g.*, Conn. Code Evid. § 1-5(a) cmt. ("Because the other part of the statement is introduced for the purpose of placing the first part into context, the other part need not be independently admissible."); *see also* Wright & Graham, *Federal Practice and Procedure* § 5078.3, at 542. Another commentator suggests that once the government introduces a misleading selective portion of a statement, the remaining portions needed for completeness are no longer hearsay because they must be introduced by the government. *See* Dale A. Nance, *A Theory of Verbal Completeness*, 80 Iowa L. Rev. 825, 845-46 (1995).

statements they complete is most consistent with the underlying fairness rationale for Rule 106."[97] If it were otherwise, "the proponent who misleadingly presented evidence [would] retain the benefit of the distorted statement" by arguing the truth of that statement, while the opponent would be left with the "weak and confusing response" that the jury may only consider the completing statements for "context."[98]

A third option invokes the concept of "opening the door" — the theory that, once a party has introduced a misleading portion of a statement, that party is prohibited

---

[97] *See* Daniel J. Capra & Liesa L. Richter, *Evidentiary Irony and the Incomplete Rule of Completeness: A Proposal to Amend Federal Rule of Evidence 106*, 105 Minn. L. Rev. 901, 944 (2020). Of course, there may be some situations in which the completing statements are not hearsay because there is genuinely a valid non-hearsay purpose for the statement. As the Advisory Committee's Note to the recently proposed amendments to Federal Evidence Rule 106 explained, "An example would be a completing statement that corrects a misimpression about what a party heard before undertaking a disputed action, where the party's state of mind is relevant. The completing statement in this example is admitted only to show what the party actually heard, regardless of the underlying truth of the completing statement." Proposed Amendments to Federal Evidence Rule 106 & Committee Note, *contained in* Standing Committee Agenda Book, at 880.

[98] Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. at 944-45 ("Requiring completing remainders to be accompanied by limiting instructions in every case [would] lead to confusion at least and fairness defeating rejection of the remainder at worst."); *see also* Wright & Graham, *Federal Practice and Procedure* § 5078.3, at 542-43 (stating that limited admissibility "does not provide an adequate solution" because "the truncator still benefits from . . . abuse of the adversary system; i.e., the prosecutor can use the inculpatory parts of the defendant's confession to prove his guilt, but the exculpatory parts can only be used to provide context, not to prove the defendant's innocence"). We note that the common law rule of completion did not limit the use of complementary portions of a statement to the non-hearsay purpose of providing context; rather, common law courts generally admitted completing statements for the truth of the matter asserted. *See* Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. at 944 ("[T]he majority of courts at common law . . . allowed completing statements to be admitted for their truth.").

from objecting on hearsay grounds when their opponent seeks to introduce the remainder of the statement to correct the misleading impression.[99] This is the theory endorsed by Professor Saltzburg.[100]

We need not address each of these approaches in detail here. We note them because they illustrate the predictable consequences of adopting a construction of Rule 106 that results in obvious unfairness: courts will look to the availability of alternative legal theories to address that unfairness. The adoption of these alternative theories — including the theory that this Court previously endorsed in the dicta in *Sipary* — leads to essentially the same result as if the court had avoided the restrictive interpretation of Rule 106 altogether. But as several commentators have noted, these alternative solutions create doctrinal confusion without providing any obvious benefit.[101] The more well-reasoned approach is to interpret Evidence Rule 106 as a rule of *both* timing and admissibility.

---

[99] *See generally* Wright & Graham, *Federal Practice and Procedure* § 5078.3, at 540-41; 1 Robert P. Mosteller et al., *McCormick on Evidence* § 56, at 468-71 (8th ed. 2020) (stating that a categorical rule against the introduction, under Rule 106, of otherwise inadmissible evidence to correct a misleading impression is "unsound" and noting the existence of multiple doctrines to circumvent such an unfair result, including admission of the other evidence for the nonhearsay purpose of providing context, or because the proponent of the initial portion of the statement waived any objection by "opening the door").

[100] 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02[3], at 106-13 (12th ed. 2019).

[101] Wright & Graham, *Federal Practice and Procedure* § 5078.3, at 540-44; Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. 901, at 945-46.

*Why we now hold that Alaska Evidence Rule 106 is a rule of timing and admissibility*

Having reviewed the language and history of Alaska Evidence Rule 106 and the purpose of the evidence rules more generally, we conclude that a party is permitted to contemporaneously complete a statement with otherwise inadmissible hearsay — *i.e.*, that Alaska Evidence Rule 106 is a rule of both timing and admissibility. In particular, given our drafters' reliance on the commentary contained in the Advisory Committee's Note to Federal Evidence Rule 106, we find persuasive the reasoning set out by the D.C. Circuit in *United States v. Sutton*.[102]

First, like the federal rule, Alaska Evidence Rule 106 is located within the "General Provisions" section of the evidence rules. Second, the Alaska rule, like the federal rule, does not contain the type of exclusionary clause that would suggest the rule should be interpreted narrowly (such as "except as otherwise provided by these rules"). Third, our rule is based on the federal rule, and in the case of Federal Evidence Rule 106, Congress declined to adopt requested language limiting the rule to evidence that was "otherwise admissible." Fourth, the federal Advisory Committee noted that Evidence Rule 106 was modeled on California's codification of the rule of completeness as well as *McCormick on Evidence*, both of which are not restricted by the other rules of evidence. Similarly, the Commentary to Alaska Evidence Rule 106 — though not directly governing because of the drafters' adoption of the federal Advisory Committee's Note — cites to the California Evidence Code and *McCormick*.

Finally, and most importantly, we agree with the *Sutton* court that "Rule 106 can adequately fulfill its function only by permitting the admission of some

---

[102] *United States v. Sutton*, 801 F.2d 1346 (D.C. Cir. 1986).

otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously."[103]

This conclusion is particularly persuasive in light of Alaska Evidence Rule 102, which provides that the rules of evidence "shall be construed to secure fairness in administration . . . to the end that truth may be ascertained and proceedings justly determined."[104]  As Professors Wright and Graham explain, "No one has ever explained how the[] standards [articulated in Rule 102] would be met by a construction [of Rule 106] that would allow a party to present evidence out of context so as to mislead the jury, then assert an exclusionary rule to keep the other side from exposing his deception."[105]  The United States Supreme Court's recent adoption of amendments clarifying that Federal Evidence Rule 106 authorizes the admission of completing evidence, even over a hearsay objection, provides further support for our conclusion.

For all these reasons, we now hold that Alaska Evidence Rule 106 has two functions:  (1) it accelerates the admission of completing evidence to the time when the original portion is introduced; and (2) it provides an independent basis, even over a hearsay objection, to admit "any other part or any other writing or recorded statement

---

[103]  *Id.* at 1368.

[104]  Alaska Evidence Rule 102 provides, in its entirety:  "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined."

[105]  Wright & Graham, *Federal Practice and Procedure* § 5078.1, at 524; *see also* Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. at 933 ("An interpretation of Rule 106 that permits a selective and misleading presentation of a statement to go unrebutted is a clear perversion of its fundamental promise of 'fairness.'").

which ought in fairness to be considered contemporaneously with" the initial portion put forward by the proponent.

We emphasize, however, that the rule of completeness under Rule 106 does not authorize the introduction of the entirety of a statement simply because a litigant introduces a part. "Rather, the admissibility of other portions of the statement is limited to those portions that are necessary to a proper understanding of the previously admitted portions."[106] That is, "no more of the remainder . . . should be admitted than that which explains or qualifies the part already received" to ensure that the initial portion is not presented in a misleading or distorted manner.[107]

Given this construction of Alaska Evidence Rule 106, we reject the State's argument that the superior court properly redacted Steven's additional statements on the ground that they were inadmissible hearsay.

---

[106] *Sipary v. State*, 91 P.3d 296, 300 (Alaska App. 2004).

[107] 1 Barbara E. Bergman & Nancy Hollander, *Wharton's Criminal Evidence* § 4:10, at 317 (15th ed. 1997); Capra & Richter, *Evidentiary Irony*, 105 Minn. L. Rev. at 938 (noting that the federal courts, while split on the scope of Federal Evidence Rule 106, have "uniformly interpreted [the] fairness standard [of Rule 106] to permit completion only when the original partial presentation of a statement is misleading and creates a distorted impression of the statement that was made"); *see also id.* at 941 ("Because [Rule 106] must be triggered by the selective and misleading presentation of a statement, the proponent of that initial statement possesses exclusive control over the admissibility of a completing remainder.").

*Why we conclude that fairness required the admission of the redacted portions of the Glass warrant recording in Steven's case, and that failure to admit these portions was not harmless*

Returning to the facts of Steven's case, we conclude that the superior court erred in declining to admit the remainder of Steven's phone conversation with M.F., as the redaction of those statements fundamentally altered the nature of the admissions and misled the jury. In *Sipary*, we noted that the admissibility of other portions of a written or recorded statement for purposes of completeness is "limited to those portions that are necessary to a proper understanding of the previously admitted portions" — namely, to "explain or clarify the previously admitted statement."[108] That standard is met here.

Steven was charged with second-degree sexual assault for engaging in sexual penetration with M.F. while knowing she was incapacitated.[109] For purposes of this offense, the term "incapacitated" means "temporarily incapable of appraising the nature of one's own conduct or physically unable to express unwillingness to act[.]"[110]

In the *Glass* warrant recording, Steven acknowledged that he should not have had sexual intercourse with M.F., and he asked for M.F.'s forgiveness. But the State introduced this apology without the necessary context. As redacted, these statements implied that Steven *knew* that M.F. was "incapacitated," as that word is defined under Alaska law. But the omitted portions (that M.F. "kept saying ya" and that Steven asked five times whether she was sure she wanted to have sex) suggest that he did

---

[108] *Sipary*, 91 P.3d at 300 (quoting *Stumpf v. State*, 749 P.2d 880, 899 (Alaska App. 1988)).

[109] Former AS 11.41.420(a)(3)(B) (2016). The legislature has since removed the requirement that a defendant must *know* that the person is incapacitated to be convicted of the offense. FSSLA 2019, ch. 4, § 4.

[110] AS 11.41.470(2).

not know that M.F. was unable to consent and believed she was actively consenting. That is, the omitted portions support the notion that while Steven might have known that M.F. was not sober, he may not have known that M.F. was "incapacitated," or "incapable of appraising the nature of [her] conduct or physically unable to express a willingness to act[.]"[111]

Allowing the State to introduce Steven's request for M.F.'s forgiveness, in which he acknowledged having sex with M.F. when she was not sober, while redacting his statements providing context for his request, misleadingly suggested that Steven was apologizing for having sex with M.F. while knowing she was incapacitated. In other words, the State's selective presentation of evidence wrongly suggested that Steven had admitted to the crime with which he was charged. The State's argument to the contrary — that the omitted portions of the recording were "not necessary to clarify, explain, or provide context to the jury" — is conclusory and unpersuasive.

For largely these same reasons, we conclude that the superior court's failure to admit the remainder of the conversation when the State chose to introduce it was not harmless. The central issues in this case were whether M.F. was incapacitated and whether Steven was aware of her incapacitation. By selectively editing Steven's statements, the State made it appear as if Steven had confessed that he was aware that she

---

[111] *See Wilson v. State*, 670 P.2d 1149, 1152 (Alaska App. 1983) (holding that, although the alleged victim was heavily intoxicated, the evidence was insufficient to establish that she was "incapacitated" — *i.e.*, that she was temporarily incapable of understanding that she was engaged in sexual penetration or unable to express her unwillingness to act); *see also Ragsdale v. State*, 23 P.3d 653, 657-58 (Alaska App. 2001).

was incapacitated.[112]  But the redacted portions suggested that Steven believed that M.F. was awake and able to express her willingness to have sex with Steven.

The only other evidence that M.F. expressed a willingness to have sex with Steven was contained in Steven's recorded statements to the trooper.  But the recording shows that the trooper disbelieved Steven's assertion of consent and largely discouraged discussion of it after Steven initially denied having any sexual encounter with M.F.  Moreover, the fact that Steven made repeated assertions of consent in a telephone conversation with M.F. that he did not know was being recorded had inherent evidentiary value that neither the trooper interview — nor even Steven's testimony, if he had elected to testify — could have replaced.[113]

---

[112] *See State v. Warren*, 732 A.2d 1017, 1020 (N.H. 1999) (where defendant told an officer that he did not know the location of the knife he used to stab the victim, that he was sorry, and that the victim had pulled a knife on him, the court abused its discretion in admitting the first two statements but precluding the defendant's statement that the victim had pulled the knife).  *Cf. Mayuyo v. State*, 400 P.3d 136, 139-40 (Alaska App. 2017) (holding that the alteration of the defendant's statement, which made it appear as if the defendant had incriminated himself to a significantly greater degree, constituted a material misrepresentation that was not harmless beyond a reasonable doubt).

[113] *See* Daniel J. Capra & Liesa L. Richter, *Evidentiary Irony and the Incomplete Rule of Completeness:  A Proposal to Amend Federal Rule of Evidence 106*, 105 Minn. L. Rev. 901, 936-38 (2020) (noting the inadequacy of a defendant's later testimony as a substitute for "contemporaneous completion" of a defendant's out-of-court statement and expressing concern about the "prohibitive cost" of requiring a defendant to sacrifice their Fifth Amendment right to decline to testify, particularly given that a defendant is often precluded, in any event, from testifying about their own out-of-court statements based on the same hearsay objection lodged to completion); 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02[3], at 106-9 to 106-11 (12th ed. 2019) (expressing same concerns).

The error in this case was exacerbated by certain remarks the prosecutor made in closing argument — remarks that Steven separately challenges on appeal. The prosecutor argued that Steven had "create[d] a narrative of consent" after being confronted by the trooper with his admission (during the *Glass* warrant recording) to having had sex with M.F.:

> And think about the motives that Charlie Steven has not to tell the truth when he's interviewed by Trooper Hayes. Remember that Charlie Steven came into this trial knowing from that *Glass* warrant phone call that [M.F.] did not remember most of that night. So, on the one hand, Charlie Steven has facts that he can't escape, he can't escape the fact that [M.F.] was so drunk that he had to carry her in from the boardwalk. He can't escape the fact that they had sex because he admitted to it on the *Glass* warrant so what does Charlie Steven do? He creates a narrative of consent that fits the facts. Creates a narrative of consent that fits the fact[s].

Although Steven did not object to this argument at the time it was made, Steven argues on appeal that the prosecutor's comments misleadingly suggested that he had invented the consent narrative for purposes of trial after he admitted on the *Glass* warrant that he and M.F. had sex — when in fact Steven had claimed, during the *Glass* warrant conversation itself, that M.F. had consented. The State responds that, when understood in context, the prosecutor's remarks referred only to Steven's shifting narratives during his interview with the trooper after he was arrested.

Given our reversal of Steven's conviction, we need not directly resolve the parties' dispute regarding these remarks. We note this issue only to illustrate the serious problems that can arise when the government is allowed to present a misleading version of a defendant's statements. Even if the prosecutor meant only to refer to Steven's shifting narratives during his interview with the trooper, the jury easily could have

misunderstood the prosecutor to be arguing that Steven invented the narrative of consent to explain away his admission to having sex with M.F. And because the full version of the *Glass* warrant recording was never provided to the jury, there was no way for defense counsel to correct that potential misunderstanding. Indeed, had the prosecutor attacked Steven's credibility in this manner prior to the close of evidence, Steven likely would have been entitled to introduce his full statement on the *Glass* warrant recording for the non-hearsay purpose of refuting the prosecutor's contention that he fabricated his consent defense in response to police questioning.[114]

When one party is allowed to present a redacted version of a statement or recording that permits a false inference, such misunderstandings are likely to arise and the integrity of the proceedings is undermined. Interpreting Alaska Evidence Rule 106 as a rule of admissibility, as we have done in this case, provides a straightforward framework for avoiding obvious unfairness.

*Conclusion*

We REVERSE Steven's conviction for second-degree sexual assault and remand this case for further proceedings.

---

[114] *See Putnam v. State*, 629 P.2d 35, 40 (Alaska 1980) (holding that when "testimony is offered merely to establish the fact that the statement was made, and not to prove the truth of the matter stated, the hearsay rule does not apply").

Judge WOLLENBERG, concurring.

I write separately to address an additional issue that, while not raised in this case, is likely to arise in future cases. Alaska Evidence Rule 106, like its current federal analogue, applies only to written and recorded statements; it does not apply to unrecorded oral statements. This means that if one party seeks to admit a portion of an unrecorded oral statement, and this portion is misleading without contemporaneous admission of completing statements from the same conversation, Rule 106 would not entitle the opposing party to require admission of the completing statements over a hearsay objection.

According to Professors Capra and Richter, courts have addressed this issue in various ways. Under the common law, the rule of completeness applied to unrecorded oral statements as well as to writings and recordings.[1] Some courts have therefore expressed support for admitting a completing portion of an unrecorded oral statement under a common law theory, resorting to general principles of relevancy (like those referred to in *Beech Aircraft*).[2] Some courts have indicated that these statements are admissible under Evidence Rule 611(a), which authorizes courts to alter the mode and order of interrogating witnesses and presenting evidence.[3] And other courts have simply

_____

[1] *State v. Warren*, 732 A.2d 1017, 1020 (N.H. 1999) ("By its express terms, Rule 106 applies only to writings or recorded statements. The common law rule, however, applied to conversations as well as to writings and recorded statements.").

[2] *See, e.g.*, *United States v. Sanjar*, 876 F.3d 725, 739 (5th Cir. 2017) (stating that the common law rule of completeness "is just a corollary of the principle that relevant evidence," including oral statements, "is generally admissible" if needed to "explain, vary, or contradict the testimony already given" (citation omitted)).

[3] *See, e.g.*, *United States v. Li*, 55 F.3d 325, 329 (7th Cir. 1995); *United States v.*
(continued...)

excluded unrecorded oral statements under the theory that they are not covered by Rule 106.[4] In their treatise on the Federal Rules of Evidence, Wright and Graham discuss a variety of other "evasions of the restrictionists" that have been used to admit written or recorded statements that are otherwise hearsay in jurisdictions that narrowly interpret Rule 106 as solely a rule of timing. These approaches could also potentially be used to admit unrecorded oral statements that are not covered by Rule 106.[5]

As this Court discusses in its lead opinion, permitting one party to introduce a misleading portion of a statement while precluding the opposing party from correcting the resulting misimpression is fundamentally unfair. This is true regardless of whether the statement at issue is a written statement, a recorded statement, or an unrecorded oral statement. Thus, were this Court faced with a situation in which one party was allowed to introduce a misleading portion of an unrecorded oral statement while the necessary complementary portion was excluded, I am confident that — like other courts — we would closely examine the various theories noted above in an effort to remedy that unfairness.[6]

---

[3] (...continued)
*Castro*, 813 F.2d 571, 576 (2d Cir. 1987); *see also Sipary v. State*, 91 P.3d 296, 301 n.7 (Alaska App. 2004) (collecting cases).

[4] Daniel J. Capra & Liesa L. Richter, *Evidentiary Irony and the Incomplete Rule of Completeness: A Proposal to Amend Federal Rule of Evidence 106*, 105 Minn. L. Rev. 901, 927-28 (2020) (collecting cases).

[5] *See* 21A Charles Alan Wright & Kenneth W. Graham Jr., *Federal Practice and Procedure, Federal Rules of Evidence* § 5078.3, at 540-44 (2d ed. 2005; updated Daniel D. Blinka ed., Apr. 2023).

[6] *See* Proposed Amendments to Federal Evidence Rule 106 & Committee Note (Appendix A to the Report of the Advisory Committee on Evidence Rules, dated
(continued...)

But the far better approach would be for Alaska to eliminate the potential for the "hodgepodge . . . coverage of unrecorded statements"[7] and instead adopt the amendments to Federal Evidence Rule 106 scheduled to take effect on December 1, 2023. In 2021, the federal Advisory Committee on Evidence Rules unanimously approved for public comment amendments that would remove the words "writing or recorded" from the text of Federal Evidence Rule 106, making it clear that the rule applies to all statements.[8] (As the lead opinion notes, the proposed amendments would also make clear in the text of Rule 106 that an adverse party may require the introduction of a completing portion of a statement "over a hearsay objection."[9])

---

[6] (...continued)
May 15, 2022), *contained in* Judicial Conference Standing Committee on Rules of Practice and Procedure Agenda Book [hereinafter "Standing Committee Agenda Book"], at 881 (June 7, 2022), https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf (recognizing that "[m]ost courts have already found unrecorded completing statements to be admissible under either Rule 611(a) or the common-law rule of completeness"); *see, e.g.*, *Castro*, 813 F.2d at 576 (noting that "courts historically have required a party offering testimony as to an utterance to present fairly the 'substance or effect' and context of the statement," and citing Federal Evidence Rule 611 and the rule of completeness as the basis for admitting completing oral statements).

[7] Report of the Advisory Committee on Evidence Rules (May 15, 2022), *contained in* Standing Committee Agenda Book, at 868 (June 7, 2022), https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf.

[8] *See id.* at 867; Proposed Amendments to Federal Evidence Rule 106 & Committee Note, *contained in* Standing Committee Agenda Book, at 879.

[9] Following the amendments, scheduled to take effect on December 1, 2023, Federal Evidence Rule 106 will read:

(continued...)

In the Committee Note accompanying the proposed amendments, the Advisory Committee detailed these two goals. First, with respect to the admission of completing statements that would otherwise be hearsay, the Committee explained that "the rule of completeness, grounded in fairness, cannot fulfill its function if the party that creates a misimpression about the meaning of a proffered statement can then object on hearsay grounds and exclude a statement that would correct the misimpression."[10] I agree with the Committee that "[a] party that presents a distortion can fairly be said to have forfeited its right to object on hearsay grounds to a statement that would be necessary to correct the misimpression."[11]

Second, with respect to unrecorded oral statements, the Committee explained:

> Most courts have already found unrecorded completing statements to be admissible under either Rule 611(a) or the common-law rule of completeness. This procedure, while reaching the correct result, is cumbersome and creates a trap for the unwary. Most questions of completion arise when a statement is offered in the heat of trial—where neither the parties nor the court should be expected to consider the

---

[9] (...continued)
If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.

U.S. Sup. Ct. Order Amending Fed. Rules of Evidence, at 1 (Apr. 24, 2023), https://www.supremecourt.gov/orders/courtorders/frev23_5468.pdf.

[10] Proposed Amendments to Federal Evidence Rule 106 & Committee Note, *contained in* Standing Committee Agenda Book, at 879.

[11] *Id.* at 880.

nuances of Rule 611(a) or the common law in resolving completeness questions. The amendment, as a matter of convenience, covers these questions under one rule.[12]

Ultimately, the Committee wrote, "The intent of the amendment is to displace the common-law rule of completeness," and avoid the confusion created by partial incorporation of the common law.[13]

During the public comment period on the proposed amendments, the Committee received only a few comments, and all were in favor of the allowance for completing hearsay and nearly all were in favor of the inclusion of unrecorded oral statements.[14]

Following the public comment period, in the spring of 2022, the Advisory Committee on Evidence Rules unanimously approved the proposed amendments, and recommended that they be approved by the Standing Committee on Rules of Practice and Procedure and referred to the Judicial Conference of the United States.[15] Both the

---

[12]   *Id.* at 881.

[13]   *Id.* at 882. The Committee Note cautions that "[a] party seeking completion with an unrecorded statement would of course need to provide admissible evidence that the statement was made," and acknowledges that in some cases, "the difficulty in proving the completing statement [may] substantially outweigh[] its probative value," resulting in possible exclusion under Evidence Rule 403. *Id.*

[14]   *See* Report of the Advisory Committee on Evidence Rules, *contained in* Standing Committee Agenda Book, at 868; Proposed Amendments to Federal Evidence Rule 106 & Committee Note, *contained in* Standing Committee Report, at 883-85.

[15]   *See* Report of the Advisory Committee on Evidence Rules, *contained in* Standing Committee Agenda Book, at 868.

Standing Committee and the Judicial Conference subsequently approved the proposal,[16] and the proposal was transmitted to and approved by the United States Supreme Court in April 2023.[17] The amendments are scheduled to take effect on December 1, 2023.

For all the reasons discussed by the Advisory Committee in the Committee Note, I urge the Alaska Supreme Court to adopt the proposed amendments to Federal Evidence Rule 106 in Alaska. By "treat[ing] all questions of completeness in a single rule,"[18] such an amendment would ensure greater consistency in application of the rules and bring Evidence Rule 106 closer to its underlying goal of securing "fairness."

---

[16] *See* Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure, at 22-24 (Sept. 2022), https://www.uscourts.gov/sites/default/files/sept_2022_jcus_rules_report_final_for_websi te.pdf; Memorandum Transmitting Proposed Amendments to the Fed. Rules of Evidence from J. Roslynn R. Mauskopf, Sec'y of the U.S. Jud. Conf., to the C.J. and Associate JJ. of the U.S. Sup. Ct. (Oct. 19, 2022), contained in U.S. Courts Pending Rules and Forms Amendments, Cong. Package, at 199 (Apr. 2023), https://www.uscourts.gov/sites/default/files/2023_congressional_package_april_24_2023 _0.pdf.

[17] *See* U.S. Sup. Ct. Order Amending Fed. Rules of Evidence & Letters from C.J. John G. Roberts Jr., U.S. Sup. Ct., to Rep. Kevin McCarthy, Speaker of the U.S. House of Representatives, and Vice President Kamala D. Harris, President of the U.S. Senate (Apr. 24, 2023), https://www.supremecourt.gov/orders/courtorders/frev23_5468.pdf.

[18] *See* Report of the Advisory Committee on Evidence Rules, *contained in* Standing Committee Agenda Book, at 867.